## GOODMAN & MITCHELL *vs.* WALKER, Executrix &c.

[CASE AGAINST ATTORNEYS-AT-LAW FOR NEGLIGENCE.]

1. *Conclusiveness of judicial decisions.*—An opinion of the supreme court is the law of the case in which it is pronounced, when brought up on a second appeal.

2. *Attorney's liability for negligence and want of skill.*—An attorney-at-law is responsible for losses caused by his disregard, in the bringing of a suit for his client, of a rule of law which was well and clearly defined, both in the text-books and the reports, and which had existed and been published long enough to justify the belief that it was known to the profession.

3. *When agent may sue in his own name.*—On a promissory note payable "to W. A. M., agent of M. W., executrix of J. H. W., deceased," an action may be maintained in the name of the agent.

4. *How executrix may sue.*—On such promissory note, the executrix may maintain an action in her own name, either individually, or in her official capacity; averring, in the latter case, that the demand is assets of her testator's estate.

5. *Departure.*—Where the writ is in the name of one person, it is a departure to file a declaration in the name of another person for his use.

6. *Admissibility of receipt and record as evidence.*—An attorney's receipt for a claim, placed in his hands for collection, is admissible evidence against him, in an action on the case for negligence and unskillfulness, to prove the relation of attorney and client; and the record of the suit on the claim is also admissible against him, to prove the final determination of that suit, although it was conducted by him in the name of another attorney.

7. *Admissibility of evidence and charge on effect.*—In an action against two, evidence being offered which is admissible against one, the other cannot exclude it because not admissible against him, but must limit its operation by a request for proper instructions to the jury.

8. *Opinion inadmissible.*—Where an attorney is charged with negligence and unskillfulness in the institution and prosecution of a suit for his client, he cannot be allowed to prove that he consulted a distinguished attorney respecting the proper course to be pursued by him, or that the arrangement

made by him was, in the opinion of the witness, the best that could be made for his client's interest.

9 *Champerty no defense to attorney.*—When an attorney is sued by his client for negligence and unskillfulness, he cannot set up champerty in the contract as a defense to the suit.

10. *Accord and satisfaction, and estoppel en pais.*—The receipt by a client, from his attorney, of a part of the proceeds of his claim, when more might have been collected by the employment of ordinary care and skill, is neither an accord and satisfaction, nor an estoppel.

APPEAL from the Circuit Court of Chambers.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Maria Walker, executrix of the last will and testament of John H. Walker, deceased, against Benjamin L. Goodman and Robert Mitchell, partners in the profession and practice of law, to recover damages for the defendants' negligence and unskillfulness in the institution and prosecution of a suit against Charles Bussey and Irwin Lawson, whereby plaintiff failed to collect the demand on which said suit was founded. A demurrer was sustained to each count in the declaration; but this ruling of the primary court was reversed on writ of error to this court, at its June term, 1852, and the cause remanded.—21 Ala. 647. After the remandment of the cause, the defendant pleaded the general issue, with leave to give any special matter in evidence; and the plaintiff replied in like manner.

The claim on which the suit against Bussey and Lawson was founded was a promissory note for $3,500, executed by Charles Bussey, John Hambrick, and Irwin Lawson, dated January 31, 1839, and payable by the 25th day of December next after date, to "William A. Mercer, agent for Maria Walker, executrix of John H. Walker, deceased"; with several credits endorsed on it. This note was placed for collection in the hands of said Goodman & Mitchell, as attorneys at law, by James Walker, as agent of Mrs. Maria Walker; and a receipt therefor taken from said attorneys, which, after setting out a copy of the note, and acknowledging its receipt by them for collection, stated that their fee for collecting was to be 20 per cent. on the amount collected, and that they were to pay the

costs, in the event the suit was lost, or costs were adjudged against the plaintiff therein.

The names of Goodman & Mitchell did not appear as attorneys of record for the plaintiff in said suit; but they employed Baugh & Brock, at a fee of $50, to prosecute the suit for them, and under their direction as leading counsel. The suit was commenced by original attachment, on the ground of the defendants' non-residence. "The papers were made out," as Brock testified, "by Goodman"; were carried by Brock to Tallapoosa county, where the suit was to be instituted, and there copied and issued. The affidavit for the attachment was made by Brock, as attorney for Maria Walker, and stated that the defendants were indebted to the said Maria Walker. The writ of attachment pursued the affidavit; but the condition of the bond recited, that said Brock, as attorney of Maria Walker, had sued out an attachment "at the suit of William A. Mercer, who sues to the use of Maria Walker"; and the declaration was in the name of said Mercer, for the use of Mrs. Walker.

The attachment was levied on several slaves, and several tracts of land; some as the property of Lawson, the others as belonging to Bussey; and sundry persons were summoned by process of garnishment, as the debtors of said Lawson and Bussey. At the appearance term, Lawson pleaded in abatement, on account of a variance between the writ and delaration; and, on the court intimating at the trial that a demurrer to this plea must be overruled, and that an amendment of the declaration could not be allowed, it was thereupon agreed between the attorneys of the respective parties, that plaintiff should dismiss the levy of the attachment on Lawson's property, and relinquish all liens which had thereby accrued, and that defendant should withdraw his plea in abatement, and suffer judgment to go by *nil dicit;* and judgment was accordingly entered pursuant to this agreement. At the same term, an order of sale, as to the property levied on as Bussey's, was granted; and the proceeds of sale, amounting to $600 or $700, were afterwards paid over by Goodman to Mrs. Walker, or her agent.

On the trial of the present suit, as the bill of exceptions states, the plaintiff offered in evidence, after having proved its execution, the defendants' receipt for the claim on Lawson and Bussey, which is above described. The defendants objected to its admission, "on the ground that there was no count in the declaration which would authorize its introduction," and reserved an exception to the overruling of their objection. After proving that the defendants, at the time this receipt was given, were practicing attorneys, plaintiff then offered in evidence, having first proved its signature, a paper signed by said Goodman, and dated Dec. 2d, 1850, which was in these words:

"This is to certify, that in the case of William A. Mercer, for the use of Maria Walker, vs. Irwin Lawson and Charles Bussey, commenced by attachment issued on the 13th day of March, 1844, returnable to the circuit court of Tallapoosa county, State of Alabama, at the spring term of said court, 1844, in which case Baugh & Brock appear as attorneys of record; and whereas suit is now pending in the circuit court of Chambers county, in favor of the said Maria Walker, against Goodman & Mitchell, for neglect and unskillfulness in the management of the case first above described: Now I, Benjamin L. Goodman, agree that any evidence which would be legally admissible to charge the said Baugh & Brock, if they were defendants in said case, may be given in evidence in said case of Walker v. Goodman & Mitchell, and also agree to be chargeable with whatever the evidence might have imposed on said Baugh & Brock, had they been defendants in said suit."

"Defendant Mitchell objected to the introduction of said agreement as evidence against him, and for any purpose whatever, on the ground that said Goodman and himself, long before the date of said agreement, had dissolved their partnership in the practice of the law, and had had no business connection as partners since their dissolution; that he had nothing to do with said agreement in any way; that there was no proof connecting him with it, and that he never before saw or heard of it. The court overruled the objection, and Mitchell excepted."

Plaintiff then offered in evidence the record of the suit against Lawson and Bussey ; "stating that she expected to show that Brock and Goodman & Mitchell were connected with it." Defendant Mitchell objected to the admission of this record, "1st, because his name did not appear on it, or in connection with it, as an attorney-at-law ; and, 2d, because said written agreement, signed by Goodman, did not bind him to receive this evidence, and it was not evidence under either count in the declaration. Goodman objected to its admission, because it would not be admissible, under either count of the declaration, if the suit were against Baugh & Brock, instead of Goodman & Mitchell." The court overruled these several objections, and exceptions were reserved to its rulings.

Plaintiff then proved, by the sheriff, the levy of the attachment in the suit against Lawson and Bussey, the value of the property, and what disposition was made of it ; also, the summons of the garnishees, and the amount of their admitted indebtedness to said defendants in atttachment. She then offered in evidence two letters, written by James T. Brock, of the firm of Baugh & Brock, to James Walker, relative to the suit against Lawson and Bussey, which were written in March and September, 1844, while said suit was pending. The defendants separately objected to the admission of these letters, on the same grounds that had been urged against the transcript ; but the court overruled their objections, and they excepted.

Plaintiff having closed her evidence, defendants then offered said J. T. Brock as a witness, who testified to the facts above stated, respecting his employment by Goodman to conduct the suit, the preparation of the attachment papers by Goodman, the institution, progress and final disposition of the attachment suit. Baugh, the partner of Brock, was then introduced by defendants, and testified, "that he spent two or three days, before filing the declaration in said attachment suit, in examining the question how, or in whose name, it should be filed ; that before said declaration was filed, the attachment and declaration were submitted to Hon. Wm. P. Chilton, a lawyer of emi-

nence and many years experience, who pronounced the declaration a good one, and the only proper one to file in the case." The court excluded the latter part of this evidence, on plaintiff's motion, and defendants excepted.

Said Baugh further testified as follows: "On the trial of the attachment suit, witness demurred to the plea in abatement filed by Lawson, on account of a variance between the attachment and the declaration. The court said, that the demurrer should be overruled. Witness then asked the court to suspend judgment, so that he might have further time for examination and reflection as to the proper course to be pursued; and the court granted the request. In deciding on the demurrer to the plea in abatement, and in answer to an application by witness for leave to amend, the court said, that leave would be granted, if there were any thing to amend by; but that there was nothing—that the declaration was in proper form, but the writ of attachment was fatally defective; and that the suit must go out of court. During the time granted by the court for examination and reflection, witness drew up another attachment; but, on reflection, and consultation with Goodman, concluded to make some arrangement, by which the negroes levied on as Bussey's property would not be lost to plaintiff. Accordingly, witness agreed with Lawson's counsel, that the demurrer to the plea should be sustained, but the levy dismissed as to Lawson's property, and the garnishees (except Goodman) discharged, to save costs. When this was mentioned to the court next morning, the presiding judge objected to it; saying, that it would be directly against the judgment of the court. It was then agreed to withdraw the plea, and let judgment go by default, as that would better correspond with the views of the court; and this was accordingly done. By this arrangement, the money arrising from the sale of Bussey's negroes, amounting to $600 or $700, was all saved to plaintiff, was collected by witness, and paid over to Goodman,—retaining $50 as his fee. Some short time thereafter, James Walker called on witness, who informed him in every particular what had been done; he received the money realized from the sale of the Bussey property,

and said nothing. Neither Mrs. Walker, nor any one for her, appeared at court to aid or consult with counsel in the cause. Goodman & Mitchell dissolved in May, or June, 1845.

"This witness further testified, that the suit should have been brought in the manner in which he filed the declaration. Defendants then proposed to prove by him, that after a full and careful examination of the law and facts relative to the pleadings in the case, and the condition of the property levied on as Lawson's, the arrangement above stated was the best thing he could do for plaintiff's interest. The court ruled out this evidence, on plaintiff's objection, and defendants excepted.

"Samuel F. Rice, who was introduced as a witness by defendants, and who had been a practicing attorney for some years, gave it as his opinion, that an action could have been maintained upon the note in the name of Mercer, or in the name of Mrs. Walker, executrix of John H. Walker, deceased; that the latter would have been the proper mode,—joining the common counts, and proving that she, as such executrix, was the real and beneficial owner ; but that no action could be maintained in the name of Mrs. Walker in her private and individual capacity. Col. Heflin, who was examined by the defendants, and who had been practicing law for some time, was of the same opinion as Mr. Rice, except that he thought the best mode would have been to sue in the name of Mercer, &c. It was agreed, also, that Chitty's Pleadings, and the cases cited in the first volume bearing on the question, together with any other decisions of our own or other States, should be regarded as duly read in evidence to the court and jury."

"This was all the evidence in the case ; and thereupon the court charged the jury, that if they believed all the evidence, they must find for the plaintiff ; to which charge the defendants excepted."

The assignments of error cover all the rulings of the court to which exceptions were reserved.

The cause was first submitted, after argument, at the

June term, 1854, and was held under advisement until the ensuing January term, when it was affirmed; LIGON, J., delivering the opinion of the court, and CHILTON, C. J., not sitting. On a subsequent day of that term, a rehearing was granted. At the next June term, it was again argued before GOLDTHWAITE, J., sitting alone on account of the incompetency of the other two judges; and he, being of opinion that the judgment should be reversed, certified the cause to the governor for a special statutory court. After argument before the special court, the judgment was reversed, and the cause remanded, at January term, 1856; COOK, J., delivering the opinion. A rehearing having been again granted, under the circumstances stated in the report in 29 Ala. 444; and the court having undergone several changes in its organization,—the cause came on for argument, at July term, 1856, before STONE, J., sitting alone.

L. E. PARSONS, with whom was P. M. ALLISON, for the appellants, made the following points:

1. The decision of this court in 21 Ala., when the case was presented on former appeal, only settles that each count in the declaration shows a good cause of action. The principal question now presented is, has the plaintiff proved the cause of action set forth in either count? The law is well settled, that an attorney is only liable for gross negligence, which is a question for the determination of the jury.—Evans v. Watrous, 2 Porter, 205. The degree of negligence necessary to charge an attorney is also a question of fact for the jury.—21 Ala. 650. It is, also, a mixed question of law and fact.—14 Johns. 304; 21 Ala. 731; 21 Ala. 218; 4 Barn. & Ald. 202; 3 Barn. & Cress. 799; 6 Bing. 460; 4 Burr. 2060; Story on Bailments, §§ 11, 16, 17. It must be borne in mind, also, that an attorney is not responsible for an error of judgment.— Kemp v. Burt, 4 Barn. & Adol. 424; 9 Martin's (La.) R. 372; 4 Burr. 2060; 7 Shep. 421; 16 Serg. & Rawle, 368; Chitty on Contracts, 555. It follows, then, that if the law governing the case was doubtful, unsettled, or con-

flicting, so that an attorney, possessing reasonable skill, and exercising reasonable diligence, was still in doubt how to act in the management of the suit, the appellants cannot be held liable for an error of judgment.

2. The decisions bearing on the question, in whose name should the suit have been instituted, are so conflicting as to render it extremely difficult to reconcile them with each other. That Mercer could not have sued on the note in his own name, is shown by the following authorities: Gilmore v. Pope, 5 Mass. 491; Gunn v. Cantine, 10 Johns. 387; Piggott v. Thompson, 3 Bos. & Pul. 147; Taunton Co. v. Whiting, 10 Mass. 327, and cases there cited; Chitty on Contracts, 229–30. On the other hand, see Irish v. Webster, 5 Greenl. 171; Taintor v. Prendergast, 3 Hill, 72. Judge Story, in his work on Agency, § 270, says: "It admits of question, whether this doctrine is maintainable upon principle, or is consistent with many other well considered authorities;" and he refers to sections 394–400, and cases therein cited in the notes, to show the adverse authorities; and closes by saying, that "it is extremely difficult to reconcile these cases with each other." It is admitted that the weight of authority, as it now stands, especially when the repeated decisions of our own court, of recent date, are taken into consideration, is in favor of bringing the suit in the name of the agent; but the rule was not so settled, at least it was not clearly settled, at the time this suit was instituted. With a single exception in Minor, the case of Tankersley v. Graham, 8 Ala. 247, is the first decision in this State on the point. It is to be observed, too, that the subsequent decisions only assert the doctrine that the agent *may* sue, and, consequently, do not conflict with the well settled rule that the principal may also sue.—Story on Agency, §§ 402, 418, 420; 1 Chitty's Pleadings, 9; Paley's Agency, (by Dunlap,) 308; White v. Owen, 12 Vermont, 361; Taintor v. Prendergast, 3 Hill, 72; 2 Ashmead, 485; 6 Wheaton, 79. These authorities conclusively establish that the attachment was properly issued.

3. It is objected, if the suit was properly brought, why was not the declaration filed in accordance with the writ?

The evidence set forth in the record, in connection with the conflicting decisions above quoted, answers the objection. Mr. Baugh testifies, that he spent two or three days in examining the question before filing the declaration, and that he consulted other lawyers who were in attendance on the court; and the object of all this examination and consultation was to extricate the case from the difficulty caused by a supposed error in bringing the suit. Do not these facts show anything but negligent indifference to the interests of their client? It is to be recollected, too, that when leave to amend was asked, the court refused to grant it, on the ground that there was nothing to amend by, because the writ was fatally defective; and in this opinion of the court, opposed as it is to the current of authority at the present day, the present chief-justice of this court, who was examined as an expert, concurred. On this question, in addition to the authorities already cited, see Tomkies v. Reynolds, 17 Ala. 115; Tate v. Shackelford, 24 Ala. 510; Harbin v. Levi, 6 Ala. 401; Lowell v. Watts, 6 East, 405; 1 Chitty's Pl. 14.

4. The appellants cannot be held liable for transcending their authority in agreeing to dismiss the levy and liens on Lawson's property. By this arrangement, $600 or $700 of the claim were saved to the plaintiff; while under the ruling of the circuit court, without such agreement, all would have been lost. This sum was afterwards paid over to plaintiff's agent; was received by him with full knowledge "of every particular as to what had been done;" and has been retained ever since. This cannot be regarded in any other light than as a full and complete ratification of the whole agreement by which the money was obtained, as much so as if plaintiff had been personally present in court, and had then instructed her attorneys to make the arrangement.—Story on Agency, § 250-253, and notes; Terrill v. Flower, 6 Martin's (La.) R. 584; Codwise v. Hacker, 1 Caines' R. 526; Loraine v. Cartwright, 3 Wash. C. C. 151; 3 Hill, 552; 5 Hill, 107; 3 Pick. 505.

5. The contract between the parties was champertous and void.—Byrd v. Odem, 9 Ala. 764; Wheeler v. Pounds,

24 Ala. 472; Burt v. Place, 6 Cowen, 431; Comyn's Digest, vol. 5, title *Maintenance*, (a), 2. An action cannot be maintained on a champertous contract. An action on the case is founded on a breach of duty growing out of a contract, express or implied; and, in cases like this, the declaration must correctly state the contract.—1 Chitty's Pleadings, 384; Wilkinson v. Moseley, 18 Ala. 290. Whether the action be case or assumpsit, there must be a contract, express or implied; and where the evidence shows an express contract, which is void, and which has been executed or is unrescinded, the law will not imply another contract, in order to enable a suitor to recover.— 14 Johns. 326; 8 Car. & P. 126; Burt v. Place, 6 Cowen, 431; Black v. Oliver, 1 Ala. 450; Boyd v. Barclay, *ib.* 34; Wheeler v. Pounds, 24 Ala. 472; McCorkle v. Doby, 1 Strobh. Law R. 396; Selway v. Fogg, 5 Mees. & W. 83; 9 C. & P. 59; 1 Ad. & El. 40; 11 Serg. & R. 155; 7 Taunton, 246; 11 Wheat. 258; 3 East. 222.

6. No action lies against Goodman & Mitchell, because the evidence shows that Baugh & Brock were employed by them, by and with the knowledge and consent of plaintiff's agent, to conduct the suit. The only step in the case taken by Goodman was in issuing the writ; and the authorities above cited show that it was correctly issued. If the declaration was not properly filed, Goodman & Mitchell are not responsible for it.

7. The receipt offered in evidence shows a contract different from that described in either count of the declaration, and ought to have been rejected on account of the variance.—1 Chitty's Pleadings, 384; Wilkinson v. Moseley, 18 Ala. 291; 1 Bing. N. C. 162; 3 Brod. & B. 54.

8. The agreement of Goodman, and the evidence offered under it, were not admissible against Mitchell, and ought to have been excluded as to him, or the court should have limited their effect by proper instructions to the jury.—Carr v. Hunley, 15 Ala. 623.

9. Baugh ought to have been allowed to give his opinion, as an expert, as to the propriety of the course pursued by him in filing the declaration.

JNO. T. MORGAN, and J. FALKNER, *contra*:

1. An attorney is responsible to his client, for injuries and losses caused by his want of reasonable skill or due diligence.—Wilson v. Coffin, 2 Cushing, 316; Dearborn v. Dearborn, 15 Mass. 316; Fitch v. Scott, 3 How. (Miss.) 314; Smallwood v. Narton, 20 Maine, 83; Governor v. Baker, 14 Ala. 652; Livingston v. Cox, 6 Penn. St. R. 360; Shields v. Blackbourne, 1 H. Bla. 158; Coopwood v. Wallace, 25 Miss. 129.

2. The institution of the suit against Lawson and Bussey, in the name of Mrs. Walker individually, shows either want of skill or negligence. The suit should have been brought in her name officially, averring that the note was assets; or in the name of Mercer, for her use.—Hazard v. P. & M. Bank, 4 Ala. 299; Alston v. Heartman, 2 Ala. 699; Sydnor v. Branch Bank, 7 Ala. 308; Madison College v. Burke, 6 Ala. 494; Garland v. Reynolds, 20 Maine R. 45; Bird v. Daniel, 9 Ala. 302; Fortune v. Brazier, 10 Ala. 791; Castleberry v. Fennell, 4 Ala. 642; Bancroft v. Paine, 15 Ala. 834.

3. If the suit was properly brought, the filing of the declaration in the name of another person evinced equal want of skill or negligence. This caused a departure, which was fatal to the plaintiff's case.—Chapman v. Spence, 22 Ala. 588; Elliott v. Smith, 1 Ala. 74.

4. The dismissal of the levy and liens on Lawson's property, and the discharge of the garnishees, as shown by the evidence, constituted such an excess of authority, and clear neglect of duty, as justified the charge of the court.—Kent v. Richards, 3 Maryland Chancery Decisions, 392; Branch Bank at Mobile v. Huggins, 3 Ala. 206; 14 U. S. Digest, 63, § 26; 12 Vermont, 68.

5. The evidence does not establish a ratification of this unauthorized act.—Blevins v. Pope, 7 Ala. 371; Wood v. McCain, 7 Ala. 800; Lazarus v. Shearer, 2 Ala. 718; Clealand v. Walker, 11 Ala. 1058. Nor does the subsequent receipt by plaintiff of the money arising from the sale of Bussey's property, constitute an accord and satisfaction, payment, or an estoppel.—Huckabee v. Albritton,

10 Ala. 657; McGar v. Williams, 26 Ala. 469; Leavitt v. Smith, 7 Ala. 175; 8 Meeson & Welsby, 858, and note.

6. The contract by which plaintiff retained and employed defendants, was not champertous.—Walker v. Cuthbert, 10 Ala. 213; Ramsey v. Trent, 10 B. Monroe, 341; White v. Roberts, 4 Dana, 172; Evans v. Bell, 6 Dana, 479. Admitting, however, that it was obnoxious to this objection, defendants cannot avail themselves of it as a defense in this action, which does not seek to enforce it, but is founded on their neglect and breach of duty.

7. The employment by defendants of assistant counsel, in whose name the proceedings were to be conducted, does not relieve them from responsibility.—Smallwood v. Narton, 20 Maine, 83; Holloway v. Lowe, 1 Ala. 246.

8. As defendants received the note for collection as partners, they are to be treated as partners, as in favor of their client, until actual notice of their dissolution is proved.—Bartlett v. Long, 2 Ala. 401.

9. The defendants' receipt was the proper evidence to prove the relation of attorney and client.—Mardis v. Shackelford, 4 Ala. 493.

10. The transcript of the suit against Lawson and Bussey was the highest and best evidence of what was done in that suit.—Moore v. Jones, 13 Ala. 296; Ansley v. Carlos, 9 Ala. 973.

11. All the evidence which was admitted against Mitchell's objections, was admissible against Goodman; and if Mitchell desired to limit its effect, he should have requested appropriate instructions to the jury.—Palmer v. Severance, 9 Ala. 751; Falkner v. Leith & Jones, 15 Ala. 9.

STONE, J.—This case has heretofore been before this court, (21 Ala. 647,) and it was then settled, that each count in the declaration contains a good cause of action. That opinion must stand as the settled law of this case. Wyatt's Adm'r v. Steele, 26 Ala. 639. The jury, by their verdict, affirmed that "they believed all the evidence;" and the inquiry arises, does the evidence prove all the material averments in either of the counts?

The injury complained of in the first count is charged to have resulted from the neglect and unskillfulness of the attorneys, in not having the "writ of attachment, affidavit and declaration, prepared, and drawn up and filed, and made out according to the laws of said State, and rules of the said court." The *gravamen* of the second count is, that the action became abortive, and of no avail, by the dismission of the levy of the attachment, and the discharge and release of its liens.

For the common accountabilities of life, all men, even those of the lowest degree of legal sanity, are presumed to know the law, and are held responsible for its violations. Every member of the legal profession admits the necessity of this rule, and yet we all know that the greatest legal minds have fallen into error. Law is certainly the most comprehensive of all the sciences; its mastery and practice the most intricate of all the professions. Change and progress, if not improvement, are observable at every epoch of its history. If, under these circumstances, members of the legal profession were held accountable for the consequences of each act which may be pronounced an error by the courts of the country, no one, I apprehend, would be found rash enough to incur such fearful risks. On the other hand, it surely can not be successfully maintained, that lawyers are a privileged class, not responsible for any, even the grossest want of skill. I hold, that they, like all other professional men and artizans, impliedly stipulate that they will bring to the service of their clients ordinary and reasonable skill and diligence; and, if they violate this implied stipulation, they are accountable to their clients for all injury traceable to such want of skill and diligence.—Chitty on Contracts, (8th Amer. from 4th London ed.) 481; *ib*. 482; Dearborn v. Dearborn, 15 Mass. 316.

Some law-writers, and some adjudged cases, are guilty of inaccuracy in the employment of the phrase, "gross negligence." Our own court fell into this error, in the case of Evans v. Watrous, 2 Por. 205. It is there said, that an attorney is not liable, "unless he has been guilty of gross negligence." In the same paragraph it is asserted, that

he "is bound to use reasonable care and skill;" and the meaning attributed by the writer of that opinion to the expression "gross negligence," is the want or absence of "*reasonable* care and skill." Thus explained, that opinion defines the true measure of an attorney's duty and liability.—Waugh v. Shunk, 8 Har. Penn. State Rep. 130; Denew v. Daverell, 3 Camp. 451; Shields v. Blackbourn, 1 H. Bla. 158; Duncan v. Blondell, 3 Starkie's Rep. 6.

In Godefrey v. Dalton, 6 Bing. 460, cited in Chitty on Contracts, 483–4, it was decided, that an attorney is liable for the consequences of ignorance, or non-observance, of the rules of practice of the court he practices in; for the want of care in the preparation of the cause for trial; while, on the other hand, he is not answerable for error in judgment upon points of new occurrence, or of nice or doubtful construction.—Chitty on Con. 482–3–4–5; Kemp v. Burt, 4 Barn. & Ad. 424; Reese v. Righy, 4 Barn. & Ald. 201; Varman v. Martin, 15 Pick. 440; Smedes v. Elmendorf, 3 John. 185; Dearborn v. Dearborn, 15 Mass. 316; Pitt v. Yalden, 4 Burr. 2060; Ireson v. Pearman, 3 Barn. & Cr. 799. This statement of the principle is well sustained both by reason and authority.

I lay down the rule, then, for the determination of this case, as follows: If the law governing the bringing of this suit was well and clearly defined, both in the text-books, and in our own decisions; and if the rule had existed, and been published, long enough to justify the belief that it was known to the profession, then a disregard of such rule by an attorney-at-law renders him accountable for the losses caused by such negligence or want of skill; negligence, if knowing the rule, be disregarded it; want of skill, if he was ignorant of the rule.

One of the earliest and best defined rules of pleading, in actions at law, is, that the suit must be brought in the name of the party in whom the legal interest is vested.— 1 Chitty's Pl. 2. When a simple contract is in terms made with an agent personally, he may sue thereon.—*Ib.* 8–9; Buffum v. Chadwick, 8 Mass. 103. This general principle is laid down in the elementary writers on pleading. Buffum v. Chadwick was decided in 1811. In

1839, Mr. Story, in his work on Agency, § 394, laid down the rule, that where "a promissory note is given to an agent as such, for the benefit of his principal, and the promise is to pay the agent *eo nomine*, the agent may sue in his own name."

In Alabama, as early as 1820, and at the second term which this court held, the same principle was distinctly and directly enunciated.—Newbold's Ex'r v. Wilson, Minor's Rep. 12. In 1837, the principle was again asserted in Ewing v. Medlock, 5 Por. 82 ; and in January, 1843, the question came again directly before this court, with the same result.—Castleberry v. Fennell, 4 Ala. 642. The same rule is settled, in the same way, in other States, and in the later decisions of this court.—Chitty on Con. (8th American, from 4th London edition,) p. 211–12, note 1 ; Bancroft v. Paine, 15 Ala. 834 ; and see authorities on the briefs of counsel ; also, Harp v. Osgood, 2 Hill, (New York,) 216.

I have examined the authorities referred to on the briefs of counsel, and many others, and have found no case of simple contract where a written promise was made to any one *eo nomine*, although described as agent, for another natural person, in which the court has held the action improperly brought in the name of the payee. True, the law never implies a promise in favor of an agent.— Branch Bank Montgomery v. Sydnor, 7 Ala. 308 ; Gunn v. Cantine, 10 Johns. 387. Nor can an agent maintain an action on a parol promise to pay him a debt due to his principal by judgment.—Nabors v. Shipley, 15 Ala. 293.

There is another class of cases, where a promise is made to an agent, treasurer, or trustee of an incorporated company, for the benefit of the company. In such cases it is generally held, that the promise is in fact made to the company, and that it is the proper party plaintiff.—Alston v. Heartman, 2 Ala. 699 ; Hazard v. Planters & Merchants' Bank, 4 Ala. 299 ; Gilmore v. Pope, 5 Mass. 491 ; Taunton & South Boston Turnpike v. Whiting, 10 Mass. 326 ; Master, Wardens & Co. v. Davis, 1 Bos. & Pul. 98 ; also, Sargent v. Morris, 3 Barn. & Ald. 277. But these do not conflict with the rule above stated.

The right, then, to sue in this case in the name of Mercer, at the time the suit was commenced, March, 1844, was so well and clearly defined, both in the text-books, and in our own decisions; and the rule had existed and been published so long, that I feel bound to pronounce the attorney guilty of gross negligence or want of skill, who would institute a suit on this contract in the name of one who had no right to sue. Had Mrs. Walker no right to sue in her own name? Evidently she had the right to sue in her own name, as executrix, averring the demand to be assets of the estate of her testator.—Harbin v. Levi, 6 Ala. 401; Dunham v. Gault, 12 Ala. 105. If the note had been made payable to her, describing her as executrix &c., she would have had the right to sue in her own name; the words executrix &c. being regarded as *descriptio personæ*.—Tate v. Shackelford, 24 Ala. 510; also, Buffum v. Chadwick, *supra*; Castleberry v. Fennell, *supra*; Tomkies v. Reynolds, 17 Ala. 115, and authorities cited.

I am of the opinion, also, that the suit might have been maintained in her name individually. In such case, the suit is not technically on the note; but the declaration, following the writ, should contain the common counts; and the note, being proven, may be given in evidence, and will establish the fact of indebtedness, in the nature of an account stated.—1 Chitty's Pl. 7–8; Martin v. Hind, 2 Cowp. 437; Carnegie v. Waugh, 2 Dowl. & Ry. 277; Garrett v. Handley, 4 Barn. & Cress. 664; Taintor v. Prendergast, 3 Hill, (N. Y.) 72; Piggott v. Thompson, 3 Bos. & Pul. 147, and note *a*; Co. of Feltmakers v. Davis, 1 Bos. & Pul. 101, note *e*. But this is a question of some doubt.

If the action was well considered, was there any authority for filing the declaration in a different name? Mr. Chitty says: "The declaration must pursue the writ, in regard to the christian and sur-names of the parties."— 1 Chitty's Pl. 279. This court, at the January term, 1840, laid down the same rule.—Elliott v. Smith, 1 Ala. 74. This rule, then, had existed, and been defined, both in the text-books and our own decisions, for a period of time, before the commencement of this suit, long enough to

justify the belief that it was known to the profession. The disregard of so plain a rule betrayed a palpable want of reasonable skill, or of reasonable diligence.—See, also, Chapman v. Spence, 22 Ala. 588. It is thus made clear, that there was equal fault in the pleader, whether he erred in bringing the suit in the name of Mrs. Walker; or, if the suit was well brought, in filing the declaration in the name of Mercer; thus producing a departure, by changing the parties. The argument by which he would escape from the supposed error in the writ, leaves him without excuse for the fault in the declaration.

But it is contended, that the presiding judge, when leave to amend was asked, replied that he would grant the leave, but there was nothing to amend by. The inference is drawn from this, that an amendment would have availed nothing, and hence was not pressed. The answer to this is, that a palpable departure in pleading, amounting to *crassa negligentia*, or *lata culpa*, had placed the record in this condition.

I hold, then, that it was a bold practice to pursue a doubtful course, when a clear one was open to the pleader. It betrayed gross negligence, or want of skill, to change the plaintiff, and declare in a name different from that named in the writ. The necessity, actual or supposed, for the discharge of the levies, was caused by the palpable fault of the pleader; and he is responsible for the consequences.

I have thus far considered this case as if it were *res integra*. Such is not its condition. When this case was before in this court, (21 Ala. 647,) the court, speaking of the first count in the declaration, the substance of which is stated in the opening of this opinion, used this language: "It may not be the strict professional duty of an attorney to prepare or supervise the preparation of an affidavit for an attachment, or a writ of attachment; but, if he does undertake to do so, and does it so negligently or unskillfully that his client in the progress of the cause suffers an injury, by reason of such want of care and skill, the attorney is liable to an action. That it is the attorney's duty to prepare a declaration admits of no question; and here

the allegation of neglect and want of skill, embraces as well the declaration, as the affidavit and writ. This made it sufficient, if the other words did not." If this extract establishes any thing, it is the proposition, that if the attorney frames the declaration *"so negligently, or unskillfully, that his client in the progress of the cause suffers injury by reason of such want of care and skill, the attorney is liable to an action."* I have shown above that, in framing the declaration, the attorney was wanting in *care or skill.* This, then, brings the case directly within the former adjudication, and I feel bound to observe and carry out that decision as the law of this case.—Matthew, Finley & Co. v. Sands & Co., at the present term.

Several points were raised on the admissibilty of evidence; all of which, I think, were correctly ruled in the court below. The receipt for the collection of the note, was a necessary fact to establish the relation of client and attorney; the relation in which the alleged default was committed. So, the record in the case of Walker v. Bussey & Lawson, was admissible, to prove the final determination of that suit.

The agreement of Mr. Goodman, dated Dec. 2d, 1850, was admissible evidence against him; and that agreement justified the admission of the letters of Mr. Brock. If Mr. Mitchell desired to relieve himself personally from the influence of this testimony, he should have asked the court to limit its operation by a proper charge.—Palmer v. Severance, 9 Ala. 751; Falkner v. Leith, 15 Ala. 9.

The proof, attempted to be made by the witness Baugh, that he had consulted a distinguished attorney; and also, that the arrangement entered into was, under all the circumstances, the best in his judgment that could be made, was properly rejected. It sought to establish no fact, and was in itself not a question of science, to justify its proof by experts.—Chitty on Contracts, 484.

Champerty, in the stipulation of commissions, can not avail the attorneys in this case. That portion of the contract being void, the attorneys having performed services, could have maintained an action for reasonable compensation.—Holloway v. Lowe, 1 Ala. 246; approved

in Elliott v. McClelland, 17 Ala. 206. Being entitled to the benefits of the retainer, it would be monstrous to relieve them from its responsibilities.

The dissolution of the partnership of Mitchell & Goodman, did not relieve Mr. Mitchell from the liabilities he assumed, when his firm undertook the collection of the note. His partner had bound him to the employment of reasonable skill and diligence in the conduct of the suit, and from that responsibility he could not relieve himself, without the consent and act of Mrs. Walker. Moreover, the default was committed while the partnership was in existence. It might be further added, that as there was no proof that Mrs. Walker had notice of the dissolution, she having traded with the firm as partners, was not chargeable with the consequences of the dissolution. Collyer on Partnership, (by Perkins,) § 120, and notes.

There is nothing in the argument, based on the fact of the receipt of a part of the money by the plaintiff below. She was entitled to as much of her demand as the attorneys, by the employment of ordinary skill and diligence, could have collected. The receipt of part by her, when more was due, was neither an accord and satisfaction, nor an estoppel.

There is no error in the record, and the judgment is affirmed.

The connection of the other members of the court with this case, devolves on me the individual responsibility of this decision. The delicacy and importance of the questions presented, have prompted me to submit this opinion to several distinguished members of the profession; gentlemen who have had no connection with the controversy, and no previous knowledge of its existence. They all concur in the correctness of the principles above expressed.

FEBRUARY 3, 1857.—I have carefully re-surveyed the grounds of this opinion. The result of my deliberations is a thorough conviction that, in declaring in a name different from that in whose favour the writ was issued, the appellants have rendered themselves liable to the plaintiff. I therefore adhere to my former opinion; basing my conclusion mainly on this ground.