SPANGLER *v.* SELLERS.*

*(Circuit Court, S. D. Ohio. February 16, 1881.)*

1. ATTORNEY AND CLIENT—ATTORNEY UNDERTAKING TO PERFORM SERVICE BEYOND HIS EMPLOYMENT—DEGREE OF SKILL.

   If an attorney, employed to conduct a cause, undertakes to perform any service in regard to the case which, by his employment, he was not bound to do, unless specially directed by his client, he will be held to the same strictness in the manner of its discharge as if within the terms of his contract.

2. ATTORNEY AT LAW—PERFECT LEGAL KNOWLEDGE NOT REQUIRED.

   The undertaking of an attorney is not that he possesses perfect legal knowledge, or the highest degree of skill in relation to the business he undertakes, nor that he will conduct it with the greatest degree of diligence, care, and prudence.

3. SAME — ORDINARY LEGAL KNOWLEDGE AND ORDINARY DILIGENCE REQUIRED.

   But the undertaking of an attorney with his client is that he possesses the ordinary legal knowledge and skill common to members of the profession, and that in the discharge of his duties he will exercise ordinary and reasonable diligence, care, and prudence.

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

4. SAME—SAME—WANT OF, IS NEGLIGENCE.

> The failure of an attorney to bring to, or exercise in, the discharge of his duties such knowledge or such degree of diligence, care, and prudence, would be negligence.

5. SAME—NEGLIGENCE—DAMAGES—WHEN RECOVERABLE.

> To authorize a recovery in damages against an attorney for negligence, not only the negligence must be established, but it must also be shown that the damage claimed was the result of such negligence.

Demurrer to Petition.

*John F. Follett*, for plaintiff.

*Bateman & Harper* and *H. C. Whitman*, for defendant.

SWING, D. J. The petition avers substantially that in the year 1870 the plaintiff, at the special instance and request of the defendant, had retained and employed the defendant as an attorney and counseller at law, for certain fees and rewards to said defendant, to prosecute and conduct and manage a certain action to be commenced in the court of common pleas within and for the county of Miami, in the state of Ohio, and to prosecute, conduct, and manage said lawsuit through the different courts to which it might be taken, by appeal or otherwise, until the final termination thereof, and the said defendant then and there accepted and entered upon said retainer and employment; said action to be brought by the said plaintiff against Daniel Brown, Eliza H. Brown, *et al.* The nature and object of said action was as follows: That at the October term of the court of common pleas of Coshocton county, Ohio, for 1869, Thomas Moore and Thomas Dix, partners, recovered a judgment against Daniel Brown, Albert Christy, and Alexander H. Spangler, the plaintiff, on a certain promissory note, whereon the said Daniel Brown was liable as principal, and the said Albert Christy and plaintiff were liable as sureties only of the said Daniel Brown; that on the thirtieth of November, 1869, execution was issued upon said judgment to the sheriff of Miami county against the said Daniel Brown, which was afterwards returned, indorsed: "Received this writ December 4, 1869, and delivered the same to M. A. Evans, my successor, January 3, 1870;" which was afterwards returned, on the fourth of January, 1870, indorsed, "No goods or chattels, lands or tenements,

found whereon to levy;" that the plaintiff, as such security, did, on the thirtieth day of February, 1870, pay on said judgment the sum of $1,928.90, in full, of said judgment, except costs, and on the fourteenth day of April, 1870, he paid the costs, amounting to $27.92; that the plaintiff, on the twenty-sixth day of January, 1870, procured an execution to issue upon said judgment against the said Daniel Brown, which said execution, for the want of goods and chattels belonging to said Brown, was levied upon certain-described real estate. The petition alleges that on the twenty-sixth day of June, A. D. 1868, the said Brown, being largely in-volved in debt, and in order to hinder, delay, and defraud his creditors, and prevent the collection of claims against him, and particularly the claim of the plaintiff, did make and exe-cute a deed for said real estate to his son, Cyrus T. Brown, and the said Cyrus T. Brown did, on the same day, execute a deed, and thereby convey the same real estate to his mother, wife of said Daniel T. Brown; that said conveyances were kept secret, and the said deeds were not recorded or presented for record until about the twenty-ninth day of August, 1869; that said conveyances were fraudulent and without consideration; and that the other of said defendants had or claimed to have liens of various kinds upon said prop-erty, by judgment or otherwise; and that said conveyances were a cloud upon the title of the said Daniel Brown.

The prayer of the petition filed by said plaintiff in said case was that said defendants answer, setting up their claims, and that the said conveyances of Daniel Brown to Cyrus Brown, and of Cyrus Brown to Eliza N. Brown, be set aside and declared null and void, and the said real estate be sub-jected to the payment of the indebtedness of the said Daniel Brown, according to priority, and for general relief.

The petition shows that the cause was tried upon the pleadings and evidence by the common pleas court of Miami county, at its October term for 1870, and a judgment was ren-dered, finding the amount of $2,072.83 due the plaintiff, and that the conveyances were void as against said claim, and or-dering the property sold in satisfaction thereof; that the de-

fendants Daniel, Cyrus, and Eliza N. Brown legally appealed the case to the district court of said county; and that the district court, at its April term, A. D. 1871, tried the case, and found that the allegations of the said plaintiff in his petition were untrue, and ordered that the petition as to him be dismissed, with costs. Whereupon it became the duty of the defendant, under and in pursuance of his said employment and contract as an attorney at law with the plaintiff, after said judgment, to file a motion for a new trial of said action, in order that said case might properly and legally be taken to the supreme court of the state of Ohio for final adjudication and decision therein. Yet the defendant, not regarding his said duty, did not nor would prosecute or manage said action with due and proper care, skill, and diligence; but, on the contrary thereof, prosecuted, conducted, and managed said action in a careless, unskilful, and improper manner, in this, to-wit: that the said defendant, after the rendition of said judgment and order in said action against the said plaintiff in said district court, failed, neglected, and refused to make and file in said district court a motion for a new trial in said action, and negligently and unskilfully attempted to take said case to the supreme court upon petition in error, without having previously made and filed a motion for a new trial of said action.

The said defendant, in so attempting to take said case to the supreme court, prepared in said case a bill of exceptions embodying the record, and all the evidence therein, and afterwards, on the fifteenth day of June, A. D. 1872, applied for and obtained leave to file said petition in error; and afterwards, at the December term of the supreme court for 1875, the said action came on to be heard upon said petition in error in said supreme court, when said court refused to consider said case, and dismissed said petition in error at the costs of the plaintiff, and affirmed the said judgment and order of the district court, for the reason that no motion for a new trial of said action had been filed, made, and overruled by the district court; and the plaintiff says that, by reason of the negligence and want of due skill of the defendant in

the management and conducting his said action, the plaintiff was in the supreme court nonsuited, whereby he was and has been hindered and prevented from recovering his claim from said Daniel Brown, but is likely to lose the same. Said Brown, at the time of the commencement of the action, was and still is totally insolvent; and the real estate which the plaintiff sought by said action to subject to the payment of his claim being amply sufficient in value to have paid in full said claim, with costs.

The plaintiff says he has been compelled to pay costs expended in said action on the twenty-fourth of June, A. D.. 1876, $128; and on the seventeenth day of June, 1875, at the request of the defendant, he advanced to him the sum of $75, as defendant represented, for the purpose of paying costs and charges of prosecuting said case in the supreme court; and the plaintiff incurred other large expenses and costs in the prosecution of said case, whereby the plaintiff hath sustained damages in the sum of $4,000. Whereupon the plaintiff prays judgment against the defendant for said sum of $4,000, his damages so as aforesaid sustained, and for all proper relief. To the petition the defendant interposed a general demurrer.

The first question which presents itself for consideration is the contract between the parties as stated in the petition. Generally, the contract was that the defendant, in his professional character as a lawyer, for a sufficient consideration from the plaintiff, undertook to institute and conduct for him the suit in the petition described. It may be a question whether, without condition, this service was to extend to all the courts. The allegations of the petition are that he was "to prosecute, conduct, and manage said lawsuit through the different courts *to which it might be taken*, by appeal or otherwise, until the final determination thereof." Whether this imposed upon the defendant the duty of taking the case to all the courts to which by law it could be by appeal or otherwise taken, or to the performance of the professional duty relating to said case in such court, if the plaintiff should take or direct the case to be taken to said court, may admit

of doubt; but in the view I have taken of this case it is not necessary to determine this question, for the negligence charged consisted in the manner of the taking of the case to the supreme court; and that the defendant in fact did take the case to the supreme court, and in doing so would be under the same obligations to the plaintiff as to the manner of performing such services as if he had been by his contract bound to their performance.

What, then, were the obligations which the law imposed upon the defendant in conducting the business he had thus undertaken?

It did not require of him the possession of perfect legal knowledge, and the highest degree of skill in relation to business of that character, nor that he would conduct it with the greatest degree of diligence, care, and prudence. But it required that he should possess the ordinary legal knowledge and skill common to members of the profession; and that, in the discharge of the duties he had assumed, he would be ordinarily and reasonably diligent, careful, and prudent. Wharton's Law of Negligence, 749, 750; Shearman & Redfield's Law of Negligence, 211; Wells' Atty. and Client, 285.

If this be the true rule, it follows, as a sequence, that if the defendant has failed to bring to the discharge of the duties assumed by him the ordinary legal knowledge and skill possessed by members of the profession, or has failed to discharge the duties with ordinary and reasonable diligence, care, and prudence, he would be guilty of negligence, and be liable to the plaintiff for the amount of damages he had sustained by reason thereof.

The negligence charged relates to the management by the defendant of the case in the district court, and consists in his taking the case to the supreme court without having first made and filed in said court a motion for a new trial. The petition shows that a bill of exceptions was taken, embodying the record and all the evidence, but that no motion was made for a new trial, and that the supreme court dismissed the proceedings in error, and affirmed the judgment below for that reason.

Section 4 of the act of twelfth of April, 1858, (Swan &
Clitchfield, 1155,) in force when these proceedings were had,
provides:

"In all causes pending in the court of common pleas, or
either of the superior courts of this state, either party shall
have the right to except to the opinion of the court on a mo-
tion to direct a nonsuit to arrest the testimony from the jury;
and all cases of motion for a new trial, by reason of any sup-
posed misdirection of the court to the jury, or by reason that
the verdict, or, in case the jury be waived, that the finding
of the court, may be supposed to be against law and evi-
dence, so that said case may be removed by petition in
error." It was held by the supreme court (*Spangler* v.
*Brown*, 26 Ohio St. 389) that under this statute it was neces-
sary that a motion for a new trial should have been made
and overruled, and exceptions taken thereto, before they
could be asked to reverse the judgment on the ground that
the court erred in its finding upon the question of actual
fraud.   This statute seems to be unambiguous in its terms,
and it had been in existence for four years; and the knowl-
edge of its provisions should ordinarily and reasonably have
been possessed by one who undertook to conduct legal pro-
ceedings of that character; and the ignorance of or failure
to apply such knowledge by the defendant was negligence.

This brings us to the consideration of the more important
question growing out of the peculiar facts of this case: Did
damage result to the plaintiff from this omission—this negli-
gence upon the part of the defendant?

It must be conceded that if the plaintiff suffered no loss or
damage by this act he would have no right of recovery.  Loss
and damage to him is the foundation upon which his action
rests; without this the action must fail.   Do the averments
of this petition, when taken altogether, show damage re-
sulted to the plaintiff from this negligence?   I know that the
general averment of the petition so alleges, but the other
averments of the petition show that all the issues as to the
fraudulent character of the conveyance, and the relief prayed
for, had been passed upon by the district court, and had all

been decided against the plaintiff, and his petition dismissed; and the only benefit which the plaintiff could have derived, if the case had been properly taken to the supreme court, from the proceeding, would have been by the court reversing the judgment of the district court, and granting him a new trial, or rendering judgment in his favor. If the judgment had been affirmed, no benefit would have resulted to him from the proceeding; and there is nowhere in the petition any averment that the judgment of the court below would have been reversed, or in anywise changed; nor does the statement of facts show that such would have been the necessary or even probable legal result if the court had fully considered the case, for the petition shows that the case was not only heard upon the allegations of the pleadings, but upon all the evidence adduced by the parties; and it does not appear that the evidence was of that character which would have required the court to have given any different judgment from the court below. In support of the right to maintain the action, and the sufficiency of the petition, I have been referred to a number of authorities, which I have carefully examined, and from which, as bearing more directly upon the case, I notice particularly the following:

In *Gambert* v. *Hart*, 44 Cal. 542, an attorney was sued for negligence in failing to file and serve a proper notice of a motion for a new trial. The plaintiff in the action had been sued in ejectment, and his defence consisted of a claim of title to the lots, derived through a certain judgment, execution, sheriff's sale and deed; but this judgment, according to decisions of the supreme court at the time of the trial, was void, which rendered the defence unavailing, and judgment was rendered against him. The attorney attempted to get a new trial, but did not take the legal steps to do so, by which his motion for a new trial was denied, and an appeal was prosecuted and dismissed for the reason that demand for a new trial had not been properly made; but at the same term of the court at which the appeal was dismissed, the court, in *Hahn* v. *Kelley*, made valid such judgments as those under which defendant claimed to defend, and which before were void. In disposing

of that case the court says: "The appeal which the plaintiff prosecuted was dismissed, it appears, at the same term at which *Hahn* v. *Kelley* was decided, because of the defects of the statement, which prevented us from considering the appeal on its merits. If we had been at liberty to look into the merits of the case, it may be that it would not have been decided until after the decision of *Hahn* v. *Kelley*, or, if decided before, the presumption is that it would have been decided in accordance with the principles announced in that case, which was decided at the same term." So that it clearly appears in this case that if the attorney had properly taken it to the supreme court, that the judgment of the court below would have been reversed, and his client's property saved. The loss of the property was therefore the necessary result of the attorney's negligence. *Drais* v. *Hogan,* 50 Cal. 121, was an action brought against an attorney for negligence in not taking the proper steps to secure a new trial. The action in which the negligence was charged was a suit against husband and wife, which the attorney was employed to defend, in which it was claimed that there was due from the wife a sum of money. The complaint did not contain an averment that the wife had separate property, or that the contract concerned her separate property. There was judgment against the defendants, and a motion for a new trial filed, and new trial granted; but, upon appeal to the supreme court, the order granting a new trial was reversed, for the reason that the attorney had not taken legal steps to secure it, and in their complaint the negligence charged was the improperly procuring the order for a new trial; and they allege in their complaint that if a new trial had been granted they would have been able to establish, as a legal defence, that Lucinda I. Drais, (the wife,) when she entered into the contract, was a married woman, and was the owner of no separate property, and that she was not a sole trader. This case was decided by the court upon the ground of the negligence of the attorney in not taking an appeal from the judgment itself, rather than for his negligence in not taking the proper steps in obtaining a new trial. The court says: "The complaint upon which

the judgment against Lucinda Drais was founded was radically defective, and wholly insufficient to support the judgment. An appeal from the judgment itself would have brought up the pleadings as a part of the judgment roll, and must have terminated in a virtual defeat of the action. An inspection of the record in that case, in view of the uniform decisions of this court, from the case of *Rowe* v. *Kohle*, 4 Cal. 285, to the present time, as to the capacity, or rather want of capacity, of a married woman to bind herself by such a contract as was alleged in that case is decisive upon this point. In this view it was inexcusable in the defendant to have permitted the time limited by statute for such an appeal from the judgment itself to pass away, and so allow the right of the defendant in that action to become lost in the abortive attempt to obtain a new trial, when such new trial, if it had been obtained, was not necessary for her protection under the circumstances of the case." So that it clearly appears, both as matter of fact and of law, that upon the new trial no judgment could have been rendered against the plaintiff; and that, upon appeal from the judgment rendered, it would have been reversed, and judgment rendered in her favor. The damage resulting to the plaintiff in being compelled to pay the judgment against her was the direct result of the attorney's negligence in either case.

In *Skillen* v. *Wallace*, 36 Ind. 319, the plaintiff claimed to be the owner of a valuable piece of ground in the city of Indianapolis, and brought suit to recover the possession thereof. The jury in that suit brought in a verdict for the plaintiff for the whole ground, which was of great value; that when the verdict was brought in by the jury the attorney took and altered it so as to cover a small and totally valueless piece of the ground, and asked the jury to find the verdict thus altered, which they did, and which the plaintiff in this case avers damaged him to the amount of $1,000. A demurrer was filed to the petition, and sustained by the court below, but was reversed on error by the supreme court. The damage in this case was the direct result of the act of the attor-

ney in changing the verdict, and but for which the plaintiff would have recovered the entire land.

In *Walker* v. *Goodman*, 30 Ala. 482, the declaration alleged that the defendants conducted the suit, in which they had been employed by the plaintiff, negligently and unskilfully, in not having a certain writ of attachment, affidavit, and declaration drawn up and filed according to the laws of the state and the rules of the court; that by reason of said negligence and unskilfulness she was prevented from recovering judgment, and was forced and compelled to release and dismiss the levy of said writ of attachment, by reason whereof the plaintiff was prevented from recovering her demand. This declaration was demurred to, and the [court below sustained the demurrer; but this judgment was reversed by the supreme court upon error. This case also shows that the damage was the direct result of the negligence of the attorney. *Goodman* v. *Walker*, *Ex'r*, 30 Ala. 482, was an action brought by the attorneys for their fees, and the court, finding the facts as in the last-preceding case, held that lawyers were responsible to their clients for all injury *traceable* to their want of skill and diligence.

All these cases show clearly that but for the negligence the loss would not have occurred, and therefore resulted directly from it. I am aware that Wharton, Neg. 752, says that when negligence has been proved, in consequence of which judgment has gone against the client, it is not incumbent upon the client to show that but for the negligence he could have succeeded in the action. It is for the solicitor to defend himself, if he can, by showing that the client has not been hurt by his negligence. And the same doctrine is stated by Wells' Attorney and Client, 298; but each of these authors, in support of the text, refers to *Godefroy* v. *Jay*, 7 Bing. 413, and to *Harter* v. *Morris*, 18 Ohio St. 492, as holding a different doctrine, and these are the only authorities they refer to upon this proposition. I have examined the case of *Godefroy* v. *Jay* carefully. In that case the attorney was employed to defend an action brought against the plain-

tiff. The attorney never gave any attention to the cause, but permitted judgment to be taken against his client by default. His client was, compelled to pay the judgment, and brought his action to recover from the attorney for negligence. Under those circumstances, it was held by the court that the plaintiff was not bound to show that judgment would not have gone against him but for the negligence, but it was for the attorney to show that the defendant was not damnified by such negligence.

The decision in that case was based upon *Marzetti* v. *Williams*, 1 Barnwell & Adolphus, 415, which was an action in tort by a depositor against his banker for not paying a check drawn by him when he had funds sufficient to do so, and it was contended that special damages must be shown; but the court held that it was an action substantially upon a contract, and that if the plaintiff should show a breach of that contract he would be entitled to nominal damages. If the doctrine of the last-mentioned case would apply to this, it would entitle the plaintiff to nothing beyond nominal damages; and the doctrine of *Godefroy* v. *Jay* is applied by Sherman & Redfield, Negligence, 221, only to cases where an attorney employed to defend a cause *does nothing*. If the principle of that case be limited in its application to such a case, it might not be objectionable; but if it is claimed to be applicable to every case where negligence is alleged, then it is in conflict with the current of American authority.

In the present case the district court, which was composed of at least three judges learned in the law, upon the examination of the testimony rendered judgment upon the merits against the plaintiff, and the only negligence alleged was the failure to make a motion for a new trial, so that the case could have been examined by the supreme court to ascertain if, upon the evidence, the judgment should have been reversed, which it would not have done, according to its repeated decisions, unless the judgment was clearly and manifestly against the evidence, which cannot be presumed. To say in such a case that when the plaintiff has established negligence that he is entitled to judgment for all he could

have had if the supreme court had reversed the judgment, and he had ultimately recovered all he claimed, unless the defendant can show that the supreme court would not have reversed the judgment, and that the plaintiff would not have ultimately recovered what he claimed, would be placing the burden of proof where, according to no established legal principle, can it rest.

In *Suydam* v. *Vance,* 2 McLean, 99, a case decided in this circuit in 1840, Mr. Justice McLean, in discussing the question of the liability of an attorney for negligence in not taking the proper steps to collect a note from the maker, says: "It must be shown, therefore, not only that the attorney was grossly negligent in proceeding against the maker of the note, but that the amount might have been collected from him had the proper steps been taken." That there must be a legal prejudice to the client is clearly shown in *Harter* v. *Morris,* 18 Ohio St. 492. In that case the petition showed that Harter, the plaintiff, was sued jointly with four others as joint makers of a promissory note; that a verdict was rendered against them all, and that he alone took a second trial, and gave bond, but that, by negligence of the attorney, the journal entry showed that a second trial had been taken by all the defendants, and by like negligence the bond was executed for the payment of any judgment which might be rendered against them; that on the second trial a verdict and judgment were rendered in favor of the defendant Harter, and against the other defendants, and that Harter was compelled, by suit on the bond, to pay the judgment against the other defendants, because they were insolvent. Upon demurrer to the petition, the court below sustained the demurrer, and rendered final judgment for the defendant. Upon error, the supreme court held that the legal effect of the undertaking was to render Harter liable only for such judgment as might be rendered against him, and that there was no negligence on the part of the defendant to the legal *prejudice* of the plaintiff, and affirmed the judgment of the court below.

From the examination I have been able to give this question, I am of opinion that to entitle the plaintiff to recover

for negligence he must not only show the negligence, but must also show that damage resulted to him from such negligence; and taking this petition in all its parts it does not show that the loss of the debt of the plaintiff was the result of the negligence of the defendant. To do this it must be shown that if the case had been properly taken to the supreme court, that that court would have reversed the decision of the district court, and this does not appear either from the allegations of the petition, or, as a conclusion of law, from the facts therein stated.

The demurrer must therefore be sustained.