# Burkham Brothers *v.* Daniel.

*Action for Breach of Special Contract for Personal Services.*

1.  *Construction of charges.*—In the construction of charges given by the court below, this court will not hold a charge abstract, and apply to it the doctrine of error without injury, when there is any evidence whatever tending to prove the facts on which it is based.

2.  *Contract for personal services ; stipulation to indemnify against mistakes.* In a contract for the performance of personal services requiring skill, care, and diligence, although the person employed stipulates that he will make good all losses caused by his mistakes, and does make reparation for all mistakes to which his attention is called, such mistakes may nevertheless justify the employer in putting an end to the contract.

3.  *Waiver of breach ; release, accord and satisfaction.*—If a person, on being discharged by his employer before the expiration of the period for which he had contracted to serve, asks for a statement of his account; which being fur-

[Burkham Brothers v. Daniel.]

nished to him, he draws out the amount due to him up to that time, except a small balance ($2.40), which he allows to remain, under legal advice; "saying nothing to the defendant at the time about said settlement, or his reason for leaving said balance, and keeps said account in his possession,"--this is not a waiver of his rights under the contract: it is not a release, nor an accord and satisfaction.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Robert A. Daniel, against C. B. Burkham and E. G. Burkham, partners doing business under the firm name of Burkham Brothers, to recover damages for an alleged breach of a verbal contract, by which plaintiff undertook to serve defendants in the capacity of a cotton-weigher, for a period of seven months, commencing on the 18th August, 1873, at the rate of $125 per month, and was discharged by them before the expiration of the term. The action was commenced on the 9th April, 1874. The complaint contained the common counts, and a special count on the contract, alleging its breach by the defendants, on the 29th November, 1873, by discharging the plaintiff without just cause or excuse, although he was ready and willing to continue the performance of his services under the contract. The defendants pleaded the general issue, "in short by consent, with leave to give in evidence any matter that might be specially pleaded, and with like leave to the plaintiff in reply."

On the trial, as the bill of exceptions states, the plaintiff testified in his own behalf, as follows : "About the middle of August, 1873, plaintiff entered into a contract with defendant (C. B. Burkham), who was then engaged in the cotton warehouse business in the city of Montgomery, to serve him as a cotton-weigher until the middle of March, 1874, at and for the compensation of $125 per month. He and defendant were negotiating about two months, before they finally consummated the contract. Plaintiff represented to defendant, before making said contract, that he was an experienced and skillful cotton-weigher, and had been engaged in the business about eight or nine years, in Columbus and Atlanta, Georgia ; and it was also understood and agreed between them, that plaintiff was to make good all mistakes he might make in weighing cotton. Defendant told him, that he had written to parties in Columbus and Atlanta, and was satisfied from their statements that plaintiff was a competent cotton-weigher. While in the defendants' employment, plaintiff made a mistake of one hundred pounds in weighing a lot of cotton belonging to Griel & Brother, which he paid for ; and he made another mistake of one hundred pounds in weighing some cotton for LeGrand & Co., which he discovered and corrected

[Burkham Brothers v. Daniel.]

in time to prevent any loss on account of it.  Another mis-
take of one hundred pounds, he thinks he made, but is not
clear about it.    These hundred pounds mistakes are common
among cotton-weighers.    Defendant paid up all that was due
plaintiff for wages, up to the time of his discharge, except
$2.40.    Defendant discharged plaintiff on the 30th Novem-
ber, 1873 ; stating at the time that he did so because plaintiff
had made a mistake in weighing a lot of cotton of nine bales
belonging to J. C. Jones.    When defendant thus discharged
him, he replied that he would see defendant again after con-
sulting his attorney.    This was in the evening ; and next
morning, after having taken legal advice, he went to defend-
ant, and told him he was subject to his orders, and offered
to continue his work under the contract ; which defendant
refused to permit him to do.    Plaintiff then went to defend-
ant's book-keeper, and told him to draw off his account to
date ; which was accordingly done, showing a balance of
$37.40 in plaintiff's favor.    Of this balance, plaintiff drew out
$35, leaving $2.40 still in defendant's hands.    He left said
balance of $2.40 in defendant's hands, by the advice of his
attorney, in order that it might not appear that he had had
a full settlement, and with a view to sue defendant for his
entire wages up to the middle of March, 1874 ;. but he did
not communicate this purpose to defendant, nor to any em-
ploye or agent of his."

The account furnished to the plaintiff, as copied into the
transcript, shows that, under date of November 11th, 1873,
he was charged $12.00, "bill of N. Griel & Bro., 100 lbs. short
weight ;" but it contains no reference to any other mistake.
The plaintiff continued his testimony thus : "Said account
was placed by me in the hands of my attorney the day it was
drawn, and has been in his possession ever since.    Nothing
was said to me about the mistake in weighing the Jones cot-
ton, until the time of my discharge ; and I deny that any
such mistake was ever made.    On account of the prevalence
of the yellow fever in Montgomery that fall, the receipts of
cotton were small ; at defendant's warehouse, about 3,000
bales.    With the exception of twelve or fourteen days, dur-
ing which I was sick with the fever, I had entire charge of
defendant's warehouse business while the fever prevailed.
After my discharge, defendant did not employ any one else
in my place."

"The defendant was then examined as a witness in his
own behalf, and testified that the contract between him and
plaintiff was substantially as plaintiff had stated it, but that
he had no recollection of any agreement, or understanding
between them, that plaintiff was to make good all mistakes
VOL. LVI.

[Burkham Brothers v. Daniel.]

he might make in weighing cotton, and did not think there was any such agreement; also, that he dismissed plaintiff, because he became satisfied, from his frequent mistakes in weighing cotton, that he was careless about his business; that three mistakes, of one hundred pounds each, had been brought to his knowledge, all of which he overlooked; that about the middle of November, 1873, he required plaintiff to re-weigh a lot of nine bales belonging to J. C. Jones, which plaintiff did, and being satisfied from a comparison of the different weights, both of which had been made by plaintiff, that there was an error, he sent an order to the warehouse to have said nine bales weighed again. Witness said, that plaintiff, at the time of his discharge, made no objection to being discharged, but merely stated that he 'would see about it,' or 'see defendant again.' Witness did not know, until the last term of this court, that any balance of plaintiff's wages up to the time of his discharge remained unpaid; and he has always been, and now is, ready to pay said balance of $2.40. Plaintiff never told him why he had not drawn out said balance. It was the next day, perhaps several days after his discharge, before plaintiff notified him that he objected to said discharge, and offered to go on with his work. It was about a week, or ten days, after the mistake in weighing the Jones cotton, before plaintiff was discharged—the end of the month in which the mistake was made. Witness was here, during the prevalence of yellow fever in 1873, nearly every day, until about the last of October, when he was absent about one week. Plaintiff did not have control of his warehouse business during that time.

"Mr. Cary was then examined as a witness for defendant, and testified : Witness has been in defendant's employment for several years, as manager of his warehouse in Montgomery, and was so employed in the fall and winter of 1873-4. Knows plaintiff, who was employed as weigher in the same warehouse. Knows of several mistakes he made in weighing cotton, and judging from the number of these mistakes, and witness' own experience and knowledge of the cotton business during five years, plaintiff is not a competent or careful weigher. During the time plaintiff was employed in said warehouse, he weighed in all 494 bales; and in weighing these he made three mistakes, of one hundred pounds each, and another mistake in weighing a lot of nine bales, belonging to J. C. Jones, of an average of nine pounds to the bale. I know that he made this mistake, because I weighed the same nine bales, on the same scales, within half an hour after he had weighed them; and my recollection is clear and positive, that his error averaged nine pounds to the bale. I weighed

[Burkham Brothers v. Daniel. |

said nine pounds while plaintiff was gone to dinner that day, and without letting him know that I intended to do so, or that he was charged with the commission of any mistake ; but I proposed to him, some time after his discharge, that we should re-weigh said nine bales in the presence of each other, which he refused to do. At the time I weighed said nine bales, I had his weights before me. I think this mistake was intentional on his part. I can not see how such a mistake could have been made by accident, under the circumstances. The cotton was perfectly dry, and had been in the warehouse about six weeks. In weighing dry cotton, no allowance is made for dampness, but the weights are taken exactly from the scales. I weighed said cotton after plaintiff had weighed it, because, as manager of the warehouse, I deemed it my duty to do so, having heard that plaintiff weighed it carelessly. Plaintiff was discharged four or five days after making said mistake in weighing the Jones cotton. I was sick in September, 1873, and was absent from the warehouse about three weeks ; and I then returned, and remained on duty there during the prevalence of the yellow fever. Plaintiff was sick, in October of that year, about three weeks. I was in charge of the warehouse all the time, save when I was sick, Immediately after discovering plaintiff's mistake in the Jones cotton, I informed defendant of it."

" Mr. Gayle, a witness for defendant, testified that he has been engaged in the business of weighing cotton for seven or eight years, and understands weighing cotton ; that a man who, in weighing 494 bales, makes three hundred-pounds mistakes, and a mistake of nine pounds on an average to the bale in a lot of nine bales, of dry cotton, is, in his opinion, an incompetent or careless weigher; that cotton is more or less damp when first received from the field, and the weigher has to use his judgment in allowing for the moisture ; but, after it has been in store for six weeks, and is dry, no allowance is made—the weights are put down exactly as shown by the scales. The plaintiff, being then recalled, testified that he was not discharged by defendant until about three weeks after the commission of the alleged mistake in the Jones cotton, and that said Cary never at any time told him of said mistake, or proposed to re-weigh the cotton in the presence of each other. Mr. Grey testified, as a witness for plaintiff, that he had been a cotton-weigher about ten years, and had much experience in the business ; that it is common with cotton-weighers, in the hurry of business, to make hundred-pounds mistakes, owing to the shifting of the weights on the beam of the scales, there being one hundred pounds difference between them ; that the best of weighers make them ;

[Burkham Brothers v. Daniel.]

and that he himself, about five years ago, made two such mistakes in one day. He further testified, on cross examination, that making three hundred-pounds mistakes, and an average mistake of nine pounds to the bale in one lot of nine bales, in weighing 494 bales, was above the average of mistakes—was 'rather too steep'—but might have been made by a competent weigher; that he made only one hundred-pounds mistake last season, in weighing 9,000 bales.

"This was all the evidence in the case; and the court thereupon charged the jury, on the written request of plaintiff, 'That if it was a part of the contract between plaintiff and defendant that plaintiff should make good all mistakes, and plaintiff did make good all mistakes as far as requested so to do, then such mistakes would not furnish a sufficient ground to the defendants to put an end to the contract.' The defendant excepted to this charge, and requested the court to give the following charge, which was in writing: 'If the jury believe, from the evidence, that at the interview between plaintiff and defendant, in which defendant informed plaintiff that he was discharged, plaintiff replied, that he would see defendant again; and that plaintiff saw defendant again the next day, and told him that he was subject to his orders; and that plaintiff afterwards went to defendant's book-keeper, and told him to make out his account; and that the book-keeper thereupon made out the account read in evidence, showing the amounts received by plaintiff from the defendant, and the amount due to him for his salary, from the commencement of his employment to the time of his discharge; and that the plaintiff received the balance due upon said account, except the small sum of $2.40, and said nothing to the defendant or his book-keeper, at the time, about said settlement, or his reason for leaving said small sum, and kept said account in his possession,—this was a waiver of his rights under said contract.' The court refused to give this charge, and the defendant excepted to its refusal."

The charge given, and the refusal of the charge asked, are now assigned as error.

BLAKEY & FERGUSON, for appellant.

ARRINGTON & GRAHAM, contra.

STONE, J.—Whether the reason assigned by appellants, for dismissing appellee from their service, was the true one, was, in the absence of rulings of the court thereon, a pure question of fact for the jury. No question of law was raised

upon it, so far as we are informed. One party contended, as we infer from the recitals in the bill of exceptions, that such was the case; while the other contended, that this was a mere pretext on the part of the employers, while the true reason was a failure of business, and consequently a desire to rid themselves of the burden of appellee's wages. With this question, as now presented, we have nothing to do. We can not affirm that there was no testimony in support of either of these views; and a charge of the court, referring this question to the jury, could not, as the facts appear in this record, have been treated as abstract. We can not apply the doctrine of error without injury to the charges given by the court.—1 Brick. Dig. 344, § 135; *Upson v. Raiford*, 29 Ala. 188; *Dill v. Camp*, 22 Ala. 249.

2. The service which the plaintiff contracted to perform, required skill, care, and diligence. Experience, and watchful attention, were among the stipulations implied in the engagement. It is said by a leading author, "Whenever there is a contract to perform any work, or to transact any business, the law implies an engagement, on the part of the person undertaking to do the work, that it shall be performed with due care, diligence, and skill, according to the order given and assented to."—2 Chitty on Contracts, 11th Amer. Ed. 796, 808. It is not enough that plaintiff had made, or had agreed to make, compensation for all injuries resulting from his mistakes. This he might have done, and yet the business of appellants as warehousemen would have been seriously injured, if not ruined, by the frequent recurrence of such errors. The Circuit Court erred in the charge given and excepted to.—*Davis v. Wade*, 4 Ala. 208; *Goodman v. Walker*, 30 Ala. 482.

3. The court did not err in refusing the charge asked. The facts supposed could not amount to a release, or an accord and satisfaction.—*Trustees v. Walden*, 15 Ala. 655.

Reversed and remanded.