# Pinkston *v.* Arrington & Graham.

*Action on the Case Against Attorneys for Damages, for Want of Care and Skill in Examining Land Titles.*

1. *Duty of Register to keep a docket, and record proceedings.*—By Section 736, Sub-Div. 2, of the Code, it is made the duty of the Register in Chancery to keep a Docket, in which must be entered the names of the plaintiffs and defendants; and, by Sub-Div. 7, to record in well bound books, within six months after the final determination of any cause, all the proceedings in relation to the same.

2. *Index to chancery records; to trial docket.*—Registers in chancery are required, by Section 743, of the Code, to keep general direct and reverse indexes of all record books in their office, but they are not required by law to keep an index to the trial docket

3. *Reasonable care and skill of attorneys in the examination of land titles.*—Where attorneys were employed to examine and report upon titles to land, by one wishing to purchase, and under such employment, examined and prepared an abstract of title, from the Government down, ascertained from the tax books that no taxes were unpaid, examined the records of the various courts and found no recorded encumbrances on the land, and examined the dockets of all the courts of record except the trial docket of the chancery court as to final decrees rendered within the last six months, but, as to these, made no inquiry of the register, nor gave any reasonable excuse for such omission, *held:* that it was a question of fact for the jury whether, under the circumstances, "reasonable care and skill" were shown.

FROM the Circuit Court of Montgomery.

Tried before the Hon. JOHN D. HUBBARD.

This action was brought by the appellant against the appellees at the January Term 1892, of the Circuit Court. The complaint set out that the defendants were practising attorneys in the city of Montgomery, and were employed by the plaintiff to investigate the title of a certain lot of land in the town of Mount Meigs, in Montgomery county, and to inform the plaintiff if one W. T. Williams, who claimed to own it, could sell and make good title thereto to the plaintiff; that the defendants acting under said employment, furnished plaintiff with an abstract of the title to said lot, and attached thereto their certificate, that they had examined the records of the law and equity courts of Montgomery county, and that there was no judgment or decree against the owner, W. T. Williams, and that there was no lien or encumbrance on said land by reason of any judgment or decree against the owner thereof, or any of his

grantees; that the title to said property was in W. T. Williams, that said title was good and sufficient to said land, and that said W. T. Williams had the lawful right to convey or mortgage the said land; that said certificate was dated Dec. 1, 1887, and signed and delivered to the plaintiff by the defendants; that the plaintiff, relying upon said abstract and certificate, and the statements made by the defendants relating to said property, purchased said land from W. T. Williams on the 2nd day of Dec. 1887; that at that time said W. T. Williams did not have the title to said land, and had no right to sell and convey it; that said land had been recovered of plaintiff by a judgment affirmed by the Supreme Court of Alabama, and that the price paid by plaintiff therefor was a total loss to him. The complaint alleged a lack of reasonable diligence and skill on the part of defendants, and their refusal to pay plaintiff his damages. Issue was taken by the defendants upon the complaint. It was shown by the plaintiff that in November, 1887, he informed defendants of his wish to buy the lot of land, in question, and that W. T. Williams claimed to own it; that he employed defendants to investigate the title, which they reported to him they had done, at the same time furnishing him with an abstract, and a certificate, which were given in evidence, the certificate being as follows: "I certify that I have carefully examined the tax books and record of sales of land for taxes in the county of Montgomery, Ala., and that the statement above made in reference thereto (in the abstract), as to the lands, is correct as taken from such books and records; and that there are no delinquent taxes on said lands. I further certify that I have examined the records of the law and equity courts in said county, and the statements above made contains a full and accurate description of each judgment or decree against the owner of said land, and that there is no lien or other encumbrance on the lands herein described by reason of any judgment or decree against the owner thereof, or any grantee herein. And I further testify that I have carefully examined the title to the within described lands and that this sheet contains a full, complete and correct abstract of all conveyances upon record affecting the same; that I have examined the records as to all conveyances therein named, and they are properly executed and indexed, and the deeds therein described are sufficient to pass title, and I further certify that there are no mechanics or other liens on the land herein described, on file in the office of the probate judge. And it is our opinion that the said W. T. Williams

has a good and sufficient title to said lands, and the lawful right to convey or mortgage the same.

Witness our hand, this first day of December, 1887.

ARRINGTON & GRAHAM, Atty's at Law.

A warranty deed, executed by W. T. Williams, conveying the premises named in the complaint, to the plaintiff, was offered in evidence, properly acknowledged, and recorded in the office of the judge of probate of Montgomery county, on the 16th of December, 1887, and plaintiff testified that upon the receipt of said attorneys' certificate, and this deed, he paid the grantor nine hundred dollars as part payment for said land, and gave his note for the balance. It was admitted that after the purchase of said land by plaintiff the same was recovered by suit, brought by the administrator of said W. T. Williams, and that the same was a total loss to plaintiff.

The proceedings of the City Court of Montgomery, in equity, were offered, showing that a decree of that court made on the 13th of July, 1887, divested W. T. Williams of all control of his estate, and R. S. Williams, his father, was appointed his trustee, with power to manage the same. The trial docket of said Chancery Court showing the cause of Williams, R. S. v. Williams, W. T., plainly docketed under the letter "W," and containing entries of date of filing of original bill, answer and final decree. Evidence was offered of the costs paid by plaintiff in the ejectment suit in the Circuit Court by which he was evicted, and attorneys fees paid in same cause. The court excluded the evidence of costs and attorneys fees paid and plaintiff excepted. It was shown by the register that the trial docket of his court, in which appeared the entry of the case of R. S. Williams v. W. T. Williams, was continuously in his office from June, 1887, to the time of this trial, he admitted that he had made no final record of this cause as required by § 736 of the Code, and that he had direct, but no reverse index of record books, as required by § 743 of the Code.

The evidence for the defendants, was that a careful examination of the records of the probate office, relating to this land, had been made, and an abstract of title extending back to the patent from the government; that the tax books had been searched to see that all taxes were paid ; that the files and records of the Chancery Court were searched but that nothing affecting this land was found, and the trial docket showed no pending case affecting it. This was substantially all the evidence. The court then charged the

[Pinkston v. Arrington & Graham.]

jury as follows : "That if the defendants examined, in Dec. 1887, the indexes of records of the causes in said City Court, required to be made under section 743, of the Code, prior to, and for the purpose of reporting on the title of said lot to plaintiff, and were not informed that the said indexes and records had not been made and kept as required by law, and had no notice or information of the decree in the cause of Williams v. Williams rendered in July 1887, and overlooked the said decree by reason of the omission of the officer to make the record, and indexes, then that it would not be negligence on their part not to have discovered and reported the proceedings and decree in said case of Williams v. Williams, although said case was indexed directly, but not inversely, on the trial docket index of said court for 1887, and might have been found had said index been examined ; that it was not incumbent on the defendants, without notice of any omission of the officer to discharge his duties, to examine the direct index of the trial docket for causes disposed of, and that they might well satisfy themselves with reference to pending causes without any examination of the index of the trial docket, and if there were no pending causes, and they were satisfied of the fact, it would not be negligence on their part not to have examined the index of the trial docket, though if they had done so they might have discovered the decree and proceedings in said cause of Williams v. Williams." To the giving of this charge the plaintiff excepted, and asked the affirmative charge for the plaintiff, which was refused, and the plaintiff excepted, and takes this appeal. The charge given and the charge refused are assigned as error.

CHAS. WILKINSON, for appellant, cited *Goodman v. Walker*, 30 Ala. 482 ; *O'Brien v. Alexander*, 37 Ga. 195 ; *Parker v. Ralls*, 28 Eng. L. & Eq. 426 ; *Jackson v. Clopton*, 66 Ala. 34 ; *Nat. Savings Bank v. W. H. Ward*, 25 U. S. S. C. Rep. 621, Lawyer's Edition ; Weeks on Attorneys, pp. 449, 517, 520.

TOMPKINS & TROY, and BRICKELL, SEMPLE & GUNTER, for appellee, cited 1 Am. & Eng. Ency. of Law, 963 ; Wharton on Negligence, § 752 ; 16 Am. & Eng. Ency. Law. 453 ; *L. & N. R. R. v. Reese*, 85 Ala. 497 ; *Bruce v. Baxter*, 7 B. J. Lea, (Tenn.) 477. An attorney in examining titles is not an indemnitor.—2 Sher. & Red. on Neg. § 574 ; *Rankin v. Schaeffer*, 4 Mo. App. 108. The measure of damages is the loss actually sustained.— *Watson v. Muirhead*, 57 Pa. St. 161 ; *Rankin v. Schaeffer, supra.* As to Attorney's fees, *Calhoun*

[Pinkston v. Arrington & Graham.]

*v. Hannon & Michael*, 87 Ala. 275 ; *Foster v. Johnson*, 70 Ala. 249 ; *Thomason v. Gray*, 82 Ala. 291. Also cited on other points, *Tidwell v. State*, 70 Ala. 33 ; *Savings Bank v. Ward*, 100 U. S. 195 ; *Fitch v. Scott*, 34 Am. Decisions, 89 ; *Wilson Russ*, 20 Mo. 421 ; *Pearson and wife v. Darrington*, 32 Ala. 260 ; *Jackson v. Clopton*, 66 Ala. 34 ; *Goodman v. Walker*, 30 Ala. 482 ; *Page v. Trutch*, 3 Cent. L. J. 559–565 ; *Gilman v. Hovey*, 20 Mo. 280 ; Best on Presumptions, § 57, p. 69, (Law Library) ; Brown's Legal Maxims, mar. p. 731 ; *Bishop v. Schider*, 2 Am. Rep. 534 ; Cooley on Torts, 378.

COLEMAN, J.—The plaintiff, wishing to purchase a lot of land, employed, for a valuable consideration, the defendants, attorneys at law, to investigate the title of one W. T. Williams, who claimed to own the lot and had offered it for sale. Upon the written statement and certificate of said attorneys, that the title of W. T. Williams was good, and that he had the right to convey, plaintiff purchased and paid for the lot. The evidence for the most part is without conflict, and shows the certificate of the defendant was dated December 1, 1887. At the July term, 1887, by a decree of the City Court of Montgomery, sitting in equity, W. T. Williams had been deprived of all control over his property, and the right to dispose of it, and one Robert S. Williams appointed trustee with the authority to manage and control the same for the benefit of W. T. Williams. This suit was styled Robert S. Williams v. William T. Williams, and the bill filed June 24, 1887—the answer admitting the allegations of the bill on the same day, and final decree rendered July 13th, 1887 ; and the cause dropped from the trial docket.

By section 736, sub-div. 2, of the Code, it is made the duty of the register "to keep a docket in which must be entered the names of the plaintiffs and defendants," &c.   Sub-div. 7. "To record in well bound books within six months after the final determination of any cause, all the proceedings in relation to the same, except those previously recorded under section 653, and except as otherwise directed in this article." Section 653.   "The original proceedings in civil suits at law or in equity, the original process issuing thereon, all affidavits and bonds taken in the course thereof must be recorded immediately on the filing threof, or on the return of such process," &c.

Section 743 is as follows :   "Registers in chancery must keep general direct and reverse indexes of all record books in their offices," &c.   The law does not require the register to keep an index to the trial docket.

The trial docket of the City Equity Court was introduced in evidence by plaintiff, and it appears that there was a direct index to this docket; and under the letter "W" the following entry was made: "Williams, R. S. vs. Williams, W. T." and referred to the case of R. S. Williams v. William T. Williams regularly docketed on the trial docket, giving date when bill and answer were filed, when cause was submitted for decree, and date of final decree.   The evidence showed that the defendant examined and prepared an abstract of the title to the lands from the government through intermediate purchasers to William T. Williams, and the tax books showing that the taxes were all paid, and that there were no recorded encumbrances on the land.   The evidence further showed that they examined the dockets of the various courts as to pending causes against William T. Williams, and the record entries of final decrees and judgments, and there were no pending cases against William T. Williams, or final judgment or decrees *recorded*, affecting his title to the lands in question.   The register had made no final record of the case of Robert S. Williams vs. William T. Williams.   Six months, the time within which registers are required to make a final record of causes disposed of, *had not elapsed.*

In the case of *Goodman & Mitchell v. Walker*, 30 Ala. 495, it was declared that lawyers "stipulate that they will bring to the service of their clients ordinary and reasonable skill and diligence; and if they violate this implied stipulation, they are accountable to their clients for all injury traceable to such want of skill and diligence;  ·  · that they are bound to use reasonable care and skill;" and in *Burkham Bros. v. Daniel*, 56 Ala. 610, it is quoted with approbation, that "whenever there is a contract to perform any work, or to transact any business, the law implies an engagement on the part of the person undertaking to do the work, that it shall be performed with due care, diligence and skill, according to the order given, and assented to; and in *Teague v. Corbitt*, 57 Ala. 543, it is said, every attorney owes his client reasonable skill and diligence ; and is responsible for all injuries clients sustain, which are traceable to a want of it.   The whole duty and responsibility of an attorney to his client are clearly embraced and defined in these principles.

Having ascertained by an examination of the trial docket that there was no *lis pendens* involving the title to this property, and that no record of any cause finally disposed of by the courts affecting the title of William T. Williams had been recorded by the register, and knowing, as they must have known, the statute granted to the register six months within

[Foreman v. Weil Bros.]

which to make a final record of causes disposed of, did that "reasonable care and diligence," which attorneys owe their clients, require that they examine the trial dockets as to causes disposed of by the court within a less time than six months, and of which no final record had been made ? or at least inquire of the register if thère were any such cases ?

We do not think it can be said, as a matter of law, that an attorney has exercised "reasonable care and skill," without having carried his investigation this far, at least in the county, where the lands lie and the claimant ·lives, without giving some satisfactory reason for the omission.

The register testified that "he had direct, but no reverse indexes to his record, as required by section 743 of the Code, but that said case of Williams had never been entered in said direct index." The evidence for the defendant is "that he went into the register's office where the files, dockets and other records of such court are kept, also the trial docket of cases then pending, and found nothing affecting said property after making an examination of the same," but made no inquiry of the register. There is no evidence that he investigated the trial docket of the previous term, though less than six months had elapsed, for causes disposed of at that term. It is evident that an ordinary examination of this docket for the previous term, either by reference to the index under exhibit "W," or of the cases then pending, or inquiry of the register, would have discovered to him that by a decree of that court, W. T. Williams had been deprived of all power to dispose of the land by sale or otherwise. Have the defendants given any satisfactory or reasonable excuse for this omission of duty ? We think this question of fact should be left with the jury.

The rulings of the trial court, in some respects,. conflict with the law, as herein declared, and the case must be reversed and remanded.

Reversed and remanded.