348 So.2d 1054 (1977)
David Glen HERSTON
v.
Calvin M. WHITESELL, Thomas T. Gallion, III, and Cary Dozier.
SC 1982.
Supreme Court of Alabama.
August 12, 1977.
*1055 Ralph H. Ford, of Ford, Caldwell, Ford & Payne, Huntsville, John B. Crawley and Robert H. Ford, Troy, for appellant.
William B. Moore, Jr., Montgomery, for appellees Whitesell and Gallion.
Joseph C. Espy, III, of Melton & Espy, Montgomery, for appellee Cary Dozier.
PER CURIAM.
Appellant Herston brought suit against Attorneys Whitesell, Gallion and Dozier, appellees, alleging that they negligently and with conscious indifference gave Herston "unskillful" advice, negligently gave improper notice of Herston's claim to the City of Troy, and negligently failed to file Herston's claim for damages within the one year period of time allowed by law.
The case is before us on summary judgment granted in favor of appellees. The issue is whether a material question of fact exists, in which case the judgment should be reversed, or whether the judgment should be affirmed as a matter of law. Rule 56, Alabama Rules of Civil Procedure. We believe material questions of fact do exist and reverse.
On April 2, 1974, appellant Herston fell while painting the interior of the City of Troy's water tower. The appellant or his firm, Horizon Paint Contractors, had contracted with the City of Troy for the performance of the work. Inside the water tank, according to the appellant's complaint, there are about 30 metal rods which radiate from the center of the water tower to the walls of the water tower. The rods are held together in the center by a "pie plate" or "disc." Nuts, screwed onto the ends of the rods, attach the rods to the pie plate. Any given rod would rest on the pie plate in its hole without being secured by a nut, but if adequate weight were placed on a rod it would pull loose from the pie plate. Several of the employees of Horizon Paint noticed that some of the nuts were missing. The day after work began, notice of the missing nuts was given to the employees or agents of the City of Troy. Melvin McLendon, Supervisor for the Water Department of the City of Troy, indicated that the rods would be fixed immediately. An employee of the City brought some nuts out to the site but made no effort to put the nuts on the rods, so Horizon Paint employees put on the nuts that were made available at that time. Over the next six weeks employees of Horizon Paint continued to ask Melvin McLendon as well as James Ray, Mayor of the City, and other City employees for nuts to attach to the remaining rods. Upon each request the City assured them that it would immediately provide the nuts and fix the rods.
Upon completion of painting the outside and the inside of the tower, with the exception of the "crown" of the tower, appellant Herston entered the tank to complete the job. He placed a 20 foot long board on several rods. He was midway on the board when the rods pulled out and appellant fell about 35 feet to the bottom of the tank.
Summary judgment was rendered on the pleadings and affidavits of the parties. The trial court reached its decision before allowing depositions.
Appellant's affidavit contains, inter alia, the following:
". . . Mr. Gallion asked us then if we had decided whether or not to sue for damages resulting from my accident. After some discussion, we agreed that suit should be filed, and the employment was made then, on a one-third contingent fee basis, which Mr. Gallion said was the usual charge in plaintiffs' cases. . . .
". . . Tommy [Gallion] said, `You've got a hell of a case.' Gallion said in effect that he was going to get Cary Dozier to help in handling the case, because Cary was from Troy and Cary's father had been a State senator from Pike County. Tommy Gallion, my wife, and I then stepped into Cary Dozier's office and discussed the case with him for an hour or so. . . . He [Dozier] sent me a copy of the claim he filed against *1056 the City of Troy on June 28, 1974. [Dozier signed Herston's name to the claim as his attorney. The $100,000.00 claim was not sworn to.]
"One day, which I believe was on a Friday, July, 1974, my wife and I went to the office of Cary Dozier at Cary Dozier's request. I believe it was Cary Dozier's last day in the office before taking a job with the District Attorney. He told us he was taking a job with the District Attorney and that he was turning the case over to Whitesell. Dozier mentioned that we should keep after Gallion and Whitesell and not let them forget our case. Dozier then escorted us across the hall to Whitesell's office.
. . . . .
"Whitesell recommended to me that I go see a Dr. Barnes, orthopedic surgeon, because he thought my Troy doctor, Dr. Adendorff, might let his testimony be tainted because the City of Troy had offered to pay his bill. . .
. . . . .
"At some time in the fall of 1974, I went to Tommy Gallion and asked him to settle the case because we needed the money so badly. Mr. Gallion advised that I not do so because I had too good a case.
. . . . .
"The named defendants never advised me that I had no claim against the City of Troy. The defendants never advised me or invited me to seek the opinion of other counsel with regard to my accident.. . . [A]bout September 8, 1975, I was advised by Mr. Ford [attorney to whom Gallion allegedly sent Herston in August, 1975] that the statute of limitations had expired on my claim against the City of Troy."
Appellee Gallion's view of this situation, as indicated by his affidavit, is as follows:
". . .
"When Mr. Herston came by my office I was engaged in conversation with a client, Mr. James C. Sheppard, Jr. Mr. Herston casually stood at my door when I asked him what had happened (his arm was in a sling), he said that he had had a fall in Troy, Alabama while a contractor on a paint job on the water tower of the City of Troy. While Mr. Sheppard was in my office, I casually replied back to Mr. Herston that I did not think you could sue the City. However, he may be able to recover expenses by having Cary Dozier of our firm go to Troy and talk with the people down there and see if they were willing to pay any of his hospitalization. At what particular time I got out of my chair, went to the next office, introduced Mr. Dozier and Mr. Herston to one another and told Cary Dozier if he would, to look into the matter and see what he could do to help Herston. That was the last time I ever heard anything from Mr. Herston, Mrs. Herston or any of the Herstons, or the City of Troy or anybody else concerning this matter."
Appellee Whitesell states the following in his affidavit:
". . .
"I did interview the plaintiff who was introduced to me by Cary Dozier who was an associate in our law firm, and Cary was leaving to join the District Attorney's Office. At the time he introduced me he showed me preliminary work that he had done investigating the fall that the plaintiff had had in the water tower in Troy, Alabama. Prior to that time, Cary had mentioned to me that he was investigating a suit in Troy that might lie against the City of Troy, and I had advised him to be sure and file a claim before six months ran as most cities and towns have a six months statute in which you must file notice of a claim. I was of the opinion then, and am of the opinion now, that Mr. Herston had no claim against the City of Troy for his injuries. I so advised him and invited him to seek the opinion of other counsel. I invited him to take whatever file we had on the matter and I believe he did do so. I gave this opinion to Mr. Herston at least six months before the statute of limitations would have run if there had been a cause of action which had a statute of limitations.

*1057 "Mr. Herston never mentioned this claim to me again or contacted me in any other fashion regarding same. . . ."
Appellee Dozier's affidavit does not vary significantly from the appellant's with regard to Dozier's activity.
The elements of an action against an attorney in his professional capacity for negligence are essentially no different from those of any other negligence suit. To recover, the appellant must prove a duty, a breach of the duty, that the breach was the proximate cause of the injury, and damages. Alabama Digest, Negligence, Key 1; Wade, The Attorney's Liability for Negligence, 12 Vand. Law Rev. 755 (1959); Barclift and Newman, The Attorney's Liability for Negligence: an Alabama Perspective, 7 Cumberland Law Rev. 69 (1976).
As to duty, the appellant contends that an attorney-client relationship existed between him and the appellees. Gallion and Whitesell deny the existence of such a relationship. In this instance, whether an attorney-client relationship existed is a question of fact for the jury. Walker v. Goodman, 21 Ala. 647 (1852). Pinkston v. Arrington & Graham, 98 Ala. 489, 13 So.2d 561 (1892).
The duty an attorney owes his client is to use "reasonable care and skill" in managing the business of his client. Goodman v. Walker, 30 Ala. 482, 496 (1857); Evans v. Watrous, 2 Port. 205 (1835). If an attorney had a duty to use more than reasonable care and skill, no one would venture to act in such a capacity. Goodman, supra; Evans, supra. The duty of using reasonable care and skill applies to the manner in which the attorney pursues the case and the law which he applies to the case. As Dean Wade states in his Vanderbilt Law Review article, supra, "It [standard of care] is composed of at least two elements . . . . The first has to do with care and diligence which he must exercise. The second is concerned with the minimum degree of skill and knowledge which he must display." Id. at 762.
". . . The undertaking of a suit, implies a faithful and diligent prosecution of it; and where it appears by the declaration, that there was a good cause of action, the attorney is bound to show some reasonable excuse for not conducting it to a successful termination. . . ." Evans, supra, at 211.
". . . If the law governing the bringing of this suit was well and clearly defined, both in the text-books, and in our own decisions; and if the rule had existed, and been published, long enough to justify the belief that it was known to the profession, then a disregard of such rule by an attorney-at-law renders him accountable for the losses caused by such negligence or want of skill; negligence, if knowing the rule, he disregarded it; want of skill, if he was ignorant of the rule." Goodman, supra, at 496.
The appellant's contention is that the appellees either negligently failed to pursue the case and/or negligently gave bad advice. Whitesell says he told the appellant that he did not have a valid claim at least 6 months before the statute of limitations ran and invited him to take his file. Appellant contends he was never told he did not have a valid claim or that he should seek the opinion of other counsel.
Whether the appellees breached their duty to use reasonable care and skill under the alleged facts of this case is for the jury to decide. We note, though, that while one's advice may be wrong (assuming arguendo), it may nevertheless be reasonable. An attorney "is not answerable for error in judgment upon points of new occurrence, or of nice or doubtful construction." Goodman, supra, at 496.
As to proximate cause, the appellant contends that as a result of the appellees' negligence he lost a valid claim against the City of Troy. Two legal questions arise at this point: (1) Could the appellant have stated a cause of action against the City? If he could not have, then any negligence of the appellees could not have proximately caused the loss of appellant's claim (and for that matter, the advice that he had no *1058 claim, assuming it was given, would have been correct). (2) Was the notice of the claim to the City legally sufficient? If it were, appellee Dozier could not have been negligent, as he left the firm shortly thereafter and gave notice to the appellant that he could no longer handle the case.
As to the first question, we hold only that the appellant's claim against the City of Troy would not have been barred by the doctrine of sovereign immunity as the operation of a water tower is a proprietary function, not a governmental one.[1]City of Birmingham v. Lake, 243 Ala. 367, 10 So.2d 24 (1942); Montgomery v. City of Athens, 229 Ala. 149, 155 So. 551 (1934); Town of Athens v. Miller, 190 Ala. 82, 66 So. 702 (1914). We, of course, did not consider whether an attorney could reasonably have concluded that action against the City of Troy would have been barred by the doctrine of sovereign immunity. We also did not consider whether the City of Troy had defenses which would have precluded the appellant's claim, whether an attorney could reasonably believe that the City had defense that would have precluded the appellant's claim, or whether the appellees' negligence, if they were negligent, is the proximate cause of the injury.
As to the second question, the notice to the City was legally insufficient. Tit. 37, § 504, Code of Alabama 1940, Recompiled 1958, reads as follows:
"§ 504. Statements, claims, or demands for injury filed.No recovery shall be had against any city or town, on a claim for personal injury received, unless a sworn statement be filed with the clerk, by the party injured, or his personal representative, in case of his death, stating substantially the manner in which the injury was received, and the day and time, and the place where the accident occurred, and the damages claimed."
Appellee Dozier signed the appellant's name to the notice as his attorney and failed to make the claim a sworn statement. The statute states that the claim has to be a sworn statement made by the injured party. City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967); City of Anniston v. Rosser, 275 Ala. 659, 158 So.2d 99 (1963).
While the notice to the City of Troy was not in compliance with the statute, we again leave to the jury the decision of whether Dozier's action was one of reasonable care and skill, and whether that negligence, assuming arguendo there was negligence, was the proximate cause of the injury.
We also did not decide whether the appellant would have had a defense with regard to the notice of his claim against the City of Troy for not filing an adequate notice. City of Montgomery v. Weldon, supra.
We do not consider what we have said to foreclose issues below as they are approached on remand. We have merely addressed the questions presented to the extent necessary to show that material questions of fact exist.
The judgment in this cause is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, FAULKNER, JONES and ALMON, JJ., concur.
MADDOX and BEATTY, JJ., concur specially.
EMBRY, J., recuses self.
SHORES, J., not sitting.
MADDOX, Justice (concurring specially):
I concur that summary judgment was inappropriate; however, I do not desire to be understood as agreeing that the notice of claim filed with the City of Troy failed to substantially comply with the requirements of law. See City of Anniston v. Rosser, 275 Ala. 659, 158 So.2d 99 (1963).
BEATTY, J., concurs.
NOTES
[1] The case of Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), which ruled that the legislature abolished the doctrine of sovereign immunity as to municipalities, does not apply to this case, as it was not decided until July 10, 1975.