[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1131 
Plaintiff, James Ott, filed an action for legal malpractice against his former attorneys, Jack and Earl Smith. A jury found in favor of the defendants and plaintiff appeals. This action arises from a previous action filed by Phyllis Fox against Ott for the wrongful repossession and conversion of a night club, the corporate stock of the night club, and the furniture and fixtures on the premises of the night club, and for the wrongful eviction of Fox from the premises, in which action she recovered a judgment for $103,346.00. That judgment was affirmed by this Court in Ott v. Fox, 362 So.2d 836 (Ala. 1978). Subsequently, Ott filed suit against these defendants, his former attorneys. We affirm.
The initial action followed a sale of the Flamingo Club by James Ott to Phyllis Fox and Phyllis Schidler. The sale involved a lease-purchase agreement covering furniture and fixtures and a lease on the building itself. These agreements included cross-default provisions to allow Ott to reclaim possession of the premises if payments were not timely made. Fox later bought Schidler's interest in the night club, but she became delinquent in the payments due Ott. Ott accepted the late payments for some time, but in one month when the payments were later than usual, Ott evicted Fox and repossessed the fixtures, furniture, stock, and night club. Fox then sued Ott and obtained the $103,346.00 judgment previously mentioned.
Ott brought this action against his attorneys, Jack Smith and Earl Smith, alleging: (1) the attorneys failed to disclose a serious conflict of interest in that Jack Smith was allegedly sexually involved with Phyllis Fox; (2) the attorneys failed to show that Fox did not own the furniture and fixtures allegedly converted, but that they had been owned by a corporation, thus depriving Fox of standing to sue for their conversion, and that any attorney exercising ordinary care and skill would have found existing authority to support this contention; (3) the attorneys negligently failed to show that the corporation had no value and thus no damages should have been awarded for its wrongful conversion; and (4) the Smiths failed to present and prosecute a compulsory counterclaim against Fox for deficiencies under the lease and security agreement.
On appeal, appellant presents a multiplicity of issues. The first issue to be decided is whether the trial court erred in granting the defendants' motion for a directed verdict as to the wanton misconduct count. Plaintiff charged that the defendants were guilty of wanton conduct in their professional duties by failing to inform the plaintiff of Jack Smith's "intimate involvement" with Phyllis Fox, which, plaintiff says, prevented the defendants from faithfully representing the interests of James Ott in the initial court action. At the present trial, Jack Smith vehemently denied any involvement with Fox and at the conclusion of testimony moved for a directed verdict. The defendants' motion stated in pertinent part:
 "Comes now the Defendant SMITH AND SMITH, a partnership, and moves this Court to direct a verdict in their favor, and as grounds therefor states the following:
. . . .
 "2. There is no evidence of reckless or wanton misconduct which proximately caused the verdict to be returned against Mr. Ott in the Fox vs. Ott trial."
At trial the court initially denied the motion for a directed verdict, but when asked by defendants' counsel whether this denial included both the negligence and wantonness counts, the court replied that this was *Page 1132 
only for the negligence count and that the court believed there was no evidence as to wantonness, and the court granted a directed verdict on that issue. Appellant now contends that this was error, alleging that the defendants did not specifically move for a directed verdict on the wanton counts in any of their motions as required by Housing Authority of theCity of Prichard v. Malloy, 341 So.2d 708 (Ala. 1977). In that case, this Court stated:
 "[A] general motion for a directed verdict, pursuant to Rule 50, can only go to the case in its entirety, and not to individual subdivisions; and, to preserve individual issues, a motion must be made for a verdict directing instruction on each of the individual issues."
341 So.2d at 709-10. As shown above, however, the defendants' motion for directed verdict specifically states in ground number two that no evidence of wantonness exists and requests a directed verdict for that reason. All other grounds listed dealt with the plaintiff's negligence count. Likewise, the request was orally made in open court for a directed verdict on the wantonness count. We believe that these factors in combination were sufficient requests for a directed verdict. Furthermore, at the time the motion was granted, the attorney for the appellant did not interpose a proper objection to the adverse ruling. It is a well settled rule that a party who fails to object to alleged errors at the trial level may not raise these alleged errors for the first time as the basis for an appeal. Holt v. Davidson, 388 So.2d 548 (Ala. 1980); RecordData International, Inc. v. Nichols, 381 So.2d 1 (Ala. 1979). An objection must be made and a ground stated therefor, or the objection and alleged error are deemed to have been waived. Thus, we cannot say that the trial court erred in respect to this issue.
Appellant also alleges as error that the trial court erred in refusing to allow the reading into evidence of the deposition of Bonnie Pass. The appellant's complaint alleged that Jack Smith engaged in illicit and immoral activities during the evening between the two days of the Fox v. Ott trial. The deposition of Bonnie Pass, which was appellant's only evidence on that issue, was found by the trial court to be irrelevant. In the deposition, Bonnie Pass stated that she and Jack Smith had spent two to three hours together the night between the first and second day of the Fox v. Ott trial, that they had gone to a motel room, had a couple of drinks, and had sex. On cross-examination, however, this testimony was severely weakened by the fact that she did not know what motel was involved, what time of night the alleged rendezvous occurred, what day it took place, or any of the details of the meeting. Finally, when questioned about her whereabouts around Thanksgiving, 1977, the time of the Fox v. Ott trial, she stated that she was in North Carolina with a boy friend.
It is the rule in Alabama that the trial court may exclude evidence, even though it is relevant, when it would serve little or no purpose except to arouse the passion, prejudice, or sympathy of the jury. Whether such evidence should be excluded is largely within the trial court's discretion. ValleyMining Corp. v. Metro Bank, 383 So.2d 158 (Ala. 1980); Roan v.Smith, 272 Ala. 538, 133 So.2d 224 (1961). In addition to the fact that the testimony was questionable, plaintiff offered absolutely no evidence to show that these alleged acts affected Jack Smith's performance at trial the following day. The trial judge properly exercised his discretion and we cannot say that to exclude this testimony was an abuse of discretion.
Appellant further alleges that in instructing the jury the trial court erred in giving three of defendants' requested charges and in refusing five of plaintiff's charges. Defendants' charges thirteen and twenty-two related to contributory negligence. Appellant contends that contributory negligence did not apply in this situation, yet the plaintiff likewise requested a similar charge on contributory negligence. We find no error in these charges.
Defendants' requested charge seventeen dealt with the right of conversion upon interference with mere possession of *Page 1133 
chattels, as embodied in Code 1975, § 6-5-261. This charge stated:
 "I charge you that an action for conversion such as that brought by Phyllis Fox against James Ott can be brought by the owner of personal property or by one who is in the mere possession of personal property even if that person in possession of personal property does not have title to the property. If you are reasonably satisfied from the evidence in this case that Phyllis Fox was a proper party to maintain the conversion action against James Ott and to recover for the items sued for, then I charge you that no motion or other action by Jack and Earl Smith would have been successful in the case filed by Phyllis Fox against James Ott."
Appellant contends, however, that the charge ignores the conflict of interest alleged in plaintiff's case and fails to take into account defendants' failure to set up and prosecute a compulsory counterclaim for the plaintiff in Fox v. Ott. This contention is without merit. The charge was accurate, predicated upon the jury's believing in Fox v. Ott that either Fox owned the property or was in possession of the property.
Plaintiff Ott also contends that it was error to refuse to give plaintiff's requested charge thirty-two, which stated that an attorney is liable for the consequences of ignorance or non-observance of the rules of practice of the courts in which he practices. This charge, however, was adequately covered by plaintiff's charge thirty-three. Refusal to give a requested jury charge is not error where the refused charge was fairly and fully covered by another given charge. Jefferson StandardLife Insurance Co. v. Pate, 290 Ala. 110, 274 So.2d 291 (1973).
Plaintiff's requested charge thirty-six was also denied by the trial court. Appellant contends that this charge covered an important part of his case: That the defendants failed to prosecute the compulsory counterclaim until the case reached court so as to preclude any possible recovery on that claim.[1]
This charge provided:
 "Plaintiff, Mr. Ott, also claims that the Defendants failed to file on his behalf a counterclaim against Mrs. Fox for the unpaid sums of money due under the lease and the security agreement. It is clear that no such counterclaim was ever filed. The Defendants, however contend that Mr. Ott told them that Mrs. Fox owed him nothing or that they in their judgment decided that it would not be wise to file such a counterclaim. If you decide that the Defendants did not exercise their judgment in good faith in not filing such a counterclaim or that they disregarded the instructions of Mr. Ott in not filing such a counterclaim, you must then go to the question of whether or not Mr. Ott would have won on his counterclaim. If you decide both of these issues in favor of Mr. Ott, you should then determine how much Mr. Ott would have been able to recover and collect and assess that sum against the Defendants as damages, in addition to any other damages, if any, that you may find Mr. Ott is entitled to under the evidence of the case." [Emphasis supplied.]
This charge is defective in that it does not properly set out the elements of a legal malpractice claim. In Herston v.Whitesell, 348 So.2d 1054 (Ala. 1977), an action for legal malpractice was defined as a negligence case. To recover in an action against an attorney in his professional capacity for negligence, a plaintiff must prove a duty, a breach of the duty, that the breach was the proximate cause of the injury, and damages. 348 So.2d at 1057. The duty an attorney owes his client is to use "reasonable care and skill" in managing the business *Page 1134 
of his client. Goodman v. Walker, 30 Ala. 482 (1857). This applies to the manner in which the attorney pursues the case and the law he applies to the case. The charge proposed here does not follow the law as it has been set out by this Court in the above cases and, therefore, the proposed charge was properly refused.
Appellant's requested charges forty and forty-one dealt with conversion. They were both long and confusing, as well as contrary to the law in Alabama. Refusal of a written charge is proper when it is abstract, misleading, confusing, or when not all facts hypothesized in the charge could be inferred from the facts proven. Burke v. Thomas, 282 Ala. 412, 211 So.2d 903
(1968); Harris v. Martin, 271 Ala. 52, 122 So.2d 116 (1960).
Finally, appellant's requested charge forty-two would have charged the jury on how to fix the value of the stock of a closely held corporation. Appellant contends that the refusal to give this charge caused the jury to speculate as to the value of the corporate stock. The valuation of closely held corporate stock was, however, presented to the jury on several theories by six expert witnesses. The issue was a factual one for the jury to decide and appellant's charge would have bound the jury to use the method propounded by plaintiff's experts. Thus, refusal to give plaintiff's requested charge forty-two was correct.
The next issue raised by the appellant is that Jack and Earl Smith should have been estopped from claiming that Phyllis Fox owned the furniture and fixtures seized by Ott in the initial action. In this case, appellees state that Fox owned the furniture and fixtures and thus had standing to sue in the first case. At trial, in the initial case, however, Fox made several statements tending to show that the corporation owned the property. As a result, appellant alleges, defendants should be estopped from claiming that Fox was the owner, under the theory that a party who has knowledge of the facts and has assumed a particular position in judicial proceedings, is estopped to assume a position inconsistent therewith in a subsequent suit. Hartley v. Alabama Nat. Bank of Montgomery,247 Ala. 651, 25 So.2d 680 (1946). While counsel for the appellant sets forth a good argument for this proposition, we cannot agree. Much of the testimony of Phyllis Fox in the Foxv. Ott trial, now relied upon by appellant, actually involved the wording of questions by defendants to try to get Fox to admit that she did not own the furniture and fixtures. Other testimony by Fox clearly indicated her ownership. Furthermore, the jury, in Fox v. Ott, concluded that Fox did, in fact, own the furniture and fixtures, so as to have standing to sue. Irrespective of who owned the chattels, however, the law in Alabama is clear that to support an action for conversion, there must be a concurrence of the right of property, be it general or special, and possession or an immediate right of possession. Stathem v. Ferrell, 267 Ala. 333, 101 So.2d 546
(1958). See also, Code 1975, § 6-5-261 (giving a right of action for conversion to a person with mere possession). Therefore, outright ownership is not essential to support an action for conversion. According to the testimony given, both in Fox v. Ott and by the expert witnesses in this action, we believe that there was sufficient evidence for a jury to find that Phyllis Fox did have standing to sue for the conversion of the furniture and fixtures, and that no estoppel would work here against the defendants.
Appellant contends that the trial court also erred in submitting to the jury the issue of contributory negligence. Appellant states that it is rarely proper for such a defense to be allowed in an attorney malpractice case, because the relationship between the attorney and client is a fiduciary one and of a confidential nature. Appellant further contends that contributory negligence has been allowed only (1) where the client was also an attorney and/or otherwise insisted on active participation in the conduct of the case, (2) where the client failed to follow the attorney's advice or instructions, and (3) where the client fails to disclose all relevant facts to the attorney. Appellant states that none of these three *Page 1135 
instances applies here. We cannot agree with that contention. In this case, defendants contended that James Ott did not follow their advice, but rather acted on his own accord in repossessing the premises in most of the particulars involved. Defendants also contend that Ott denied under oath in Fox v.Ott, against their advice and instructions, that he had given prior sworn testimony, which denial severely prejudiced the jury's impression of him and damaged his credibility. These allegations are sufficient to allow the defense of contributory negligence in this action.
In Theobald v. Byers, 193 Cal.App.2d 147, 13 Cal.Rptr. 864
(1961), the California Court of Appeals discussed in detail the rationale for permitting contributory negligence in attorney negligence cases. That court stated:
 "The rule is well established that an attorney is liable to his client for negligence in rendering professional services. The courts have consistently held that liability will be imposed for want of such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise. . . . The lawyer can thus properly be classified with members of various other professions who are considered to possess knowledge, skill or even intelligence superior to that of an ordinary man and are, as a consequence, held to a higher minimum standard of conduct. . . . Doctors and dentists are held to this higher standard of care and their services can also be said to be of a fiduciary and confidential nature. Hence it would seem clear that similar rules of law would be applicable to all three professions. In actions against doctors and dentists for medical malpractice, courts have held the doctrine of contributory negligence to be a proper defense. . . . A patient will thus be barred from recovery for medical malpractice where the patient has disobeyed medical instructions given by a doctor or dentist or has administered home remedies to an injury without the aid of medical advice. There would seem to be no reason whatever why the same rule should not be applicable in a legal malpractice action where there is evidence that a client chose to disregard the legal advice of his attorney. In our opinion, any other rule would be grossly unfair."
193 Cal.App.2d at 150, 13 Cal.Rptr. 864. In an action against an attorney for negligence in executing his professional duties, the elements are essentially no different from those of any other negligence suit. To recover, the party seeking damages must prove a duty owed, a breach of that duty, that the breach was the proximate cause of the injury, and damages.Malloy v. Sullivan, 387 So.2d 169 (Ala. 1980); Herston v.Whitesell, 348 So.2d 1054 (Ala. 1977). As stated by the California Court of Appeals in Theobald, we see no reason why contributory negligence should not be applicable in a legal malpractice action where the client has failed to follow the attorney's advice or instructions.
We have carefully considered the remainder of appellant's contentions and have found them all to be without merit. The trial court properly directed a verdict against the plaintiff on the wantonness count and properly submitted all other issues to the jury. Since we find no error in the decision of the trial court, this case is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.
[1] There was, in fact, a conflict in the evidence as to whether Ott had a valid counterclaim to assert. Defendants testified that in light of the great amount of money Ott had collected from Fox before repossession, Ott had agreed with the Smiths not to assert his possible claim for money owed on the sale of the night club, since such a claim might inflame the jury. Furthermore, in Fox v. Ott, Ott testified that in return for allowing him to repossess the club, he and Fox had "called it even."