ADAMS, Justice.
This is a legal malpractice case. The trial court granted summary judgment in favor of the defendants. We affirm that judgment.
James Hulsey filed suit against Attorney John Coggin and the law firm of North, *1204 Haskell, Slaughter, Young & Lewis, P.A. (North, Haskell), with which Coggin was employed, alleging legal malpractice in the defendants’ representation of Hulsey. Hulsey had retained the defendants to clear title to certain mineral and mining rights claimed simultaneously by Hulsey, the Drummond Coal Company, and the First National Bank of Birmingham. The representation of Hulsey lasted from May 29, 1978, to approximately October 1982.
Hulsey’s complaint contains three counts. Count One alleges that the defendants negligently failed to take any action in regard to clearing title for Hulsey, and permitted the statute of limitations to run on one potential cause of action, slander of title.
Count Two alleges fraud and misrepresentation in that the defendants accepted representation of Hulsey when First National Bank was already a corporate client, and further, that the defendants failed to communicate this conflict of interest to Hulsey.
Count Three alleges that the defendants breached their contract with Hulsey by failing to communicate the above-mentioned conflict of interest, and by causing Hulsey to enter into a lease agreement which warranted that Hulsey owned an undivided 100% interest in and to the title to the coal covered by the lease, even though title had not been cleared by the defendants.
Hulsey amended Count Two of his complaint to allege that the fraud and misrepresentation complained of consisted specifically of the defendants’ acts of 1) representing both Hulsey and the First National Bank at the same time, 2) recommending that Hulsey enter into the above-mentioned lease, and 3) misrepresenting to Hulsey that a settlement of the mineral rights claim had been negotiated with First National Bank, when in fact this was not true.
Coggin and North, Haskell moved for summary judgment and filed affidavits of Coggin and Attorney Frank Young in support of the motion. Hulsey filed an affidavit in opposition to the motion, and depositions of Coggin and Hulsey were taken and filed. The trial court granted summary judgment in favor of the defendants based on the pleadings, affidavits, and depositions. This appeal followed.
The issue in this case is whether a material question of fact exists which would preclude the entry of summary judgment. We hold that such a question of fact does not exist. Therefore, we affirm.
Although the briefs of both parties liberally espouse facts not supported by the record, our consideration of the pleadings, affidavits, and depositions reveals the facts of this case to be as follows:
The land in question was deeded to the plaintiff’s great-great-grandfather, Martin Turner, by the United States government in 1896. It was subsequently purchased by Joe and Ruby Postell. In 1946, plaintiff’s parents, Dewey and Bonnie Hulsey, obtained a deed to the property, and in 1976 it was conveyed to Benjamin Hulsey, plaintiff’s brother. Although James Hulsey does not own the property, he has power of attorney to act for his brother Benjamin.
Vernon Cumen leased the right to mine the land in issue from Benjamin Hulsey in 1977. In 1978, a representative of First National Bank of Birmingham asked Cu-men to stop the mining operations, claiming that the bank actually owned the mineral rights in the property. The bank claimed title through a 1923 warranty deed from T.J. Postell and Ruby Postell to L.B. Mus-grove, which was recorded in 1924. Benjamin Hulsey claimed title through a 1946 deed from the Postells to Hulsey’s parents, which was recorded in 1946. Plaintiff Hul-sey first contacted defendant Coggin when this title dispute arose between First National Bank and Cumen in 1978.
During the course of Coggin’s representation of Hulsey, no suit was ever filed to quiet title. Coggin conducted negotiations with First National Bank, but no settlement was ever agreed upon. Eventually, Hulsey leased the mineral rights to the land to Pickens Sand and Gravel Company. It is in connection with this lease that Hul-sey alleges Coggin committed fraud.
*1205 Summary judgment was properly granted on Hulsey’s negligence count. This Court has stated the elements of a legal malpractice action as follows:
The elements of an action against an attorney in his professional capacity for negligence are essentially no different from those of any other negligence suit. To recover, the appellant must prove a duty, a breach of the duty, that the breach was the proximate cause of the injury, and damages. [Citations omitted.]
Herston v. Whitesell, 348 So.2d 1054 (Ala.1977). In Herston, the plaintiff contended that as a result of the defendants’ negligence, he lost a valid claim against a municipality. Addressing the issue of proximate cause, the Court asked:
Could the appellant have stated a cause of action against the City? If he could not have, then any negligence of the appellees could not have proximately caused the loss of appellant’s claim (and for that matter, the advice that he had no claim, assuming it was given, would have been correct).
348 So.2d at 1057-58. A summary judgment in favor of the defendant lawyers was reversed in Herston, because the plaintiff’s claim was not barred and because jury questions were present as to the existence of the attorney-client relationship, and as to whether the lawyers breached their duty to use reasonable care and skill.
In the present case, however, Hul-sey cannot prevail on his negligence count because he cannot show proximate cause; his action to quiet title is barred by the rule of repose. If Hulsey did not have a valid cause of action in the first place, the defendants’ failure to institute a lawsuit cannot constitute negligence.
The rule of repose has been discussed in this way:
Since McArthur v. Carrie’s Admr., 32 Ala. 75 (1858), this State has followed a rule of repose, or rule of prescription, of 20 years. This principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope. It is a doctrine that operates in addition to laches. Unlike laches, however, the only element of the rule of repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured. It operates as an absolute bar to claims that are unasserted for 20 years. [Citations omitted.]
Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982). Another case expounded the justification of the rule:
It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have demanded an accounting, and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to demand an accounting.
Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201 (1912).
Hulsey claimed title to the property at issue in this case through a 1946 deed recorded in 1946. The First National Bank of Birmingham claimed title to the land pursuant to a 1923 deed recorded in 1924. As of 1966, Hulsey’s claim had been unas-serted for 20 years. Therefore, by the time Hulsey hired the defendants in 1978, the rule of repose had barred an action to quiet title.
Furthermore, although not the basis of this decision, we do note that subsequent to the termination of the attorney-client relationship between the plaintiff and defendants, Hulsey filed a quiet title action with another attorney acting as his representative. That action was disposed of by summary judgment in favor of the defendants First National Bank of Birmingham and Drummond Coal Company, based on the 20-year rule of repose. This Court ultimately affirmed that summary judgment on the authority of Boshell v. Keith, supra. Hulsey v. First National Bank, 440 So.2d 559 (Ala.1983).
*1206 As far as an action to quiet title is concerned, Hulsey could not prove that any action of the defendants resulted in the loss of a claim against First National Bank or Drummond Coal Company. Similarly, Hulsey could not have proved a case of slander of title, because the requisite element of plaintiffs ownership of the property at issue was missing. Womack v. McDonald, 219 Ala. 75, 121 So. 57 (1929). Accordingly, Hulsey’s negligence count was properly disposed of as a matter of law by the trial court.
We now address Hulsey’s claim of fraud and misrepresentation. Hulsey claims that the defendants represented him and First National Bank at the same time and failed to disclose this conflict of interest to him. The record is void of any evidence to support this allegation. It is clear that defendant North, Haskell represented First National Bank on one unrelated matter prior to its representation of Hulsey, and that defendant Coggin was not involved in that matter. Since no evidence supports Hulsey’s claim of conflict of interest, there was no fraud arising therefrom.
Similarly, there is no evidence in the record to support the plaintiff’s claim that Coggin misrepresented to Hulsey that a settlement had been negotiated with First National Bank. The undisputed testimony of Coggin is that the Bank made one or more settlement proposals, which were rejected by Hulsey. Thus, the evidence does not support a claim of fraud in this matter.
The remaining act of fraud alleged by Hulsey was Coggin’s act of “recommending the plaintiff enter into a coal lease which contained a warranty that he possessed the mineral and mining rights to the property in question.” It is undisputed that Coggin sent a proposed lease agreement to the attorney for Pickens Sand and Gravel. This lease contained no warranty of title. Pickens Sand and Gravel drafted its own lease, adding a warranty provision, and returned it to Coggin. It is undisputed that Coggin forwarded the revised lease to Hulsey with a letter explaining that the lease had been prepared by counsel for Pickens Sand and Gravel based on Coggin’s prior draft, and that “the warranty language and the reimbursement language in the original draft ... has been marked out and revised per our discussion.” Thus, it is undisputed that Coggin clearly pointed out to Hulsey that the warranty language had been added by Pickens. This is not a misrepresentation.
Additionally, Hulsey admits that he signed what is denominated “Coal Warranty Deed” at the same time he signed the lease in question. It is undisputed that this deed was neither prepared by Coggin nor reviewed by him, but that Hulsey negotiated this conveyance himself. The language of the deed reveals that Hulsey conveyed not just the mineral rights to his land, but the surface rights as well. The deed also warrants that Hulsey owned 100% title to both the coal and the land itself. Coggin later advised Hulsey that the deed he signed was not in Hulsey’s best interest and that a correction deed should be executed.
Coggin could not be guilty of fraud in “recommending” that Hulsey sign a lease with a warranty provision, because Pickens Sand and Gravel was responsible for that provision. Hulsey executed a deed warranting 100% ownership in the mineral and surface rights to the land in spite of Cog-gin’s recommendation that Hulsey not sign a lease with such warranties. Therefore, summary judgment was proper on the fraud and misrepresentation count.
Hulsey’s breach of contract claim is based on the same alleged conflict of interest and misrepresentation discussed above. Having affirmed the finding that these claims lacked merit, then a fortioñ, we must find that the breach of contract claim fails also. We affirm the summary judgment rendered on the contract count.
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, AL-MON and EMBRY, JJ., concur.